McARDLE REAL ESTATE COMPANY, PROSECUTOR, v.
MARGARET C. McGOWAN, DEFENDANT.

Argued October 4, 1932—Decided November 18, 1932.

Before Justices PARKER and LLOYD.

For the prosecutor, *Mark A. Sullivan.*

For the defendant, *Aloysius McMahon.*

The opinion of the court was delivered by

PARKER, J. The writ brings up an order made by the First District Court of Jersey City, making absolute a rule to show cause, and providing in particular that three judgments in three suits in that court wherein the real estate company above named was plaintiff and said Margaret McGowan was defendant, "be set aside and vacated." Each of the three judgments was a default judgment, defendant not appearing and judgment being entered on the statutory affidavit of the cause of action. *Pamph. L.* 1913, *p.* 280. The judgments were docketed and executions thereon were levied against real estate, which was put up for sale by the sheriff and sold, by virtue of the McArdle executions, to Violette Lynch, a junior judgment creditor, but no deed has been delivered by the sheriff.

At some stage in these proceedings not clearly indicated by the state of the case, it transpired that defendant was of unsound mind, and about two months after the sheriff's sale lunacy proceedings were begun in the Court of Chancery and duly prosecuted, resulting in an adjudication that Miss McGowan was a lunatic and had been such for over three years past. Her sister was appointed guardian of her person and property, and by her attorney obtained the rule to show cause which led to the opening of the judgments.

The prosecutor first objects that the District Court erred in opening the judgments.

It is not argued that the thirty days statute (*Comp. Stat., p.* 1959, § 17) controls the present situation. The case of *Lutter* v. *Neubauer,* 100 *N. J. L.* 17; *affirmed,* 101 *Id.* 222, cited by both counsel, is dispositive of that point and several others arising in this case. But the argument seems to be that the present case does not meet all of the four requirements laid down in the case cited. That it does meet the first two, viz., that defendant was insane when served with

process, and that the court was unaware of that disability, is not denied. The challenge relates to the third and fourth. Conceding that defendant did not appear and was not represented, it is denied that she "had in fact a good and meritorious defense." But the meaning of that phrase is to be gathered from the remarks of this court on page 19 of the Lutter case. It does not mean a defense which can be guaranteed to prevail at a trial, but one which if stated on an ordinary application to open a default judgment for surprise and merits would lead the court to grant the application. The lunatic signed a lease as tenant about August 1st, 1930, and she vacated the premises after three months, about October 31st. The claim in the first suit is for rent of October, November and December. As to the latter two months, we have at least the disaffirmance by a lunatic of a contract she was legally incapable of making, except for necessaries. See *Hurey* v. *Leavitt,* 93 *Id.* 299. Assuming that in view of her occupancy of the premises during October, she was liable for that month, as to which we express no opinion, at least the defense for the other two months has such merit as calls for a trial; and that is what was meant in the Lutter case.

As to the fourth prerequisite to opening the judgment, it is urged that the rights of an innocent third party have intervened, and that such third party has not been brought into the present proceeding, and will be legally aggrieved by the opening of the judgments if sustained. It is said that Mrs. Lynch, "a stranger to the proceedings below, had therefore incurred liabilities, and had become invested with a fixed and definite legal right, which is recognized and enforced by the law." The brief maker does not state what the liabilities are, nor what fixed and definite legal right is vested in Mrs. Lynch by her bid at the sheriff's sale. If she had become a *bona fide* purchaser, then, as the court had jurisdiction of the parties and of the subject-matter, she would be protected by her deed from the sheriff even if the judgments and executions were set aside in a direct proceeding. *Comp. Stat., p. 4677, pl.* 10; 23 *C. J.* 771; *Nichols* v. *Dissler,* 31 *N. J. L.* 461; *Shultz* v. *Sanders,* 38 *N. J. Eq.* 154; *affirmed, Ibid.*

293. In this last case there were infants, against whom no proof had been made. But if Mrs. Lynch has not completed the purchase by paying the money and taking the deed, she is not a *bona fide* purchaser (23 *C. J.* 759), and it is difficult to see what "fixed and definite legal rights" she acquired, by merely contracting to purchase under judgments apparently valid at the time of the sale, but attacked before it was consummated. A purchaser in that situation would seem entitled to have back what he advanced in cash on account of his bid, but no more. As to the costs of advertising, &c., she is not liable for those. For the lunatic it is urged that Mrs. Lynch may not be the innocent third party that she is claimed to be; but that question cannot be settled at this time, particularly as she is not before us. We conclude that the District Court did not err in opening the judgments.

But the rule entered in the District Court provides that the three McArdle judgments "be set aside and vacated." The phrase in itself does not clearly indicate whether the court ruled merely that the judgments should be opened and the defendant admitted to defend on the merits, or whether it was intended to quash the whole proceeding in each case; but an examination of the record makes it plain that the latter course was meant, as the rule making absolute the rule to show cause specifically states that "service was not made in accordance with the manner prescribed for service of process upon a lunatic." Other parts of the record, needless to recite here, confirm this view. Hence the determination in the District Court was a final one, and this makes it unnecessary to consider the propriety of a *certiorari* in advance of final judgment.

We think there was error in adjudging that defendant had not been properly served with process. The lower court seems to have been of opinion that service, to be valid, must be personal, and "in the presence of a competent person as required by statute." We know of no such statute, and none has been cited to us. Counsel relies on the case of *In re Martin*, 86 *N. J. Eq.* 265 (at *p.* 271), where the late Chancellor Walker quotes a note found on pages 19, 20 of Dickinson's Chancery

Precedents. Assuming the correctness of that note, it relates to actions in equity and does not apply to suits at law. As to these latter, our leading decision is *Van Horn* v. *Hann,* 39 *N. J. L.* 207, wherein (at *p.* 213) the court says, citing English authorities: "The *common law* rule [italics ours] is that a lunatic defends in the same manner as ordinary persons. Process is served upon him personally: then, if an infant, he appears by guardian, and if of full age, by attorney;" remarking, in the next breath, that "in equity, the practice is different."

The word "process" is a generic term, and is defined by Blackstone as "the means of compelling the defendant to appear in court." 3 *Bl.* 279. No doubt the word was used by Mr. Justice Reed in its generic sense in the Van Horn case; and while the remarks above quoted appear to be *obiter,* there is no reason to doubt their correctness. The important point to note, however, is that process against a lunatic was executed in the same manner as if he were sane (2 *Arch. Pr.* 959), and under the English law as a general rule all service of process was personal. At an early date the matter began to be regulated by statute, so that in 1725 we find an act providing that in suits in the superior courts under ten pounds there shall be no arrest, but the defendant shall be served personally within the jurisdiction with a copy of the process. 12 *Geo.* I., *c.* 29. Similar statutes followed from time to time, until about 1831 (2 *Wm. IV., c.* 39) summons became the uniform process, with a few exceptions, for commencement of ordinary actions at law; and personal service was imperative. *Arch. Pr.* (*6th Eng. ed.*) 646, 658; *Tidd Pr.* (*9th ed.*) 166, 167. But in New Jersey, even as a province, substituted service was permitted, and consisted in general terms, of leaving a copy of the summons at defendant's place of abode with a member of the family. See *Allison* 469, § 2, relating to justice courts, and *Pat.* 357, § 18, relating to courts of law generally. Similar provisions remain to this day. Practice act of 1903, section 52; amended *Pamph. L.* 1912, *p.* 469; District Court act of 1898, *Comp. Stat., p.* 1966, § 45; Justice Court act of 1903,

*Comp. Stat., p.* 2985, § 16. The legislature has never made any special provision for lunatics or idiots or infants, with respect to service of summons, so far as we can discover, though as early as 1820 it took occasion to exempt idiots and lunatics from arrest on civil process, even at a time when arrest for debt was the common practice; *Rev.* 1821, *p.* 698, § 8; *R. S.* 1847, *p.* 556, § 12; *Rev.* 1877, *p.* 605, § 20; *Coombs* ads. *Janvier,* 31 *N. J. L.* 240, 242, 243; *Comp. Stat., p.* 2794, § 20; and by an act of 1909 (*Pamph. L., p.* 313; *Comp. Stat., p.* 2794), one adjudged a lunatic is exempt from suit for a month after appointment of guardian, unless the plaintiff obtains special leave of the court. It is fair to say that if the legislative power had intended a distinction to be made in the manner of serving process as between lunatics and sane persons, it would have so provided by statute; and failing such provision, that it intended the service of a summons to be the same in either case, leaving it to the courts to see to it that the interests of the incompetent are properly protected after he is in court. Cases in other jurisdictions seem to be somewhat at variance, though perhaps this is more apparent than real. 32 *C. J.* 782, 783, §§ 626, 628. But in the absence of authority in this state, we consider that both legally and practically, service as prescribed by statute is sufficient. Legally, for the reasons just stated: practically, because if the service is personal it conforms to the common law, and if made at the place of abode by leaving it with a competent person (presumably loyal to the interests of the lunatic) it is more likely to be turned over to an attorney than if delivered to the lunatic himself.

In one of the cases brought up by this writ, the service was personal; in the other two it was made at the place of abode. In all three cases the formula required by the statute was followed.

Assuming then, that the District Court had jurisdiction over the judgments after they were docketed, a point not discussed in the briefs and which we have not considered (see *Baisley* v. *Universal Drier Co.,* 61 *N. J. L.* 459), the District Court was generally right in opening the judgments. That reopens

the cases for a trial on the merits, after an attorney has been appointed for the defendant. The question whether Violette Lynch should be reimbursed for any payment she had made on account of her bid, and if so by whom, is a question that we think does not arise here, or as part of the issue whether the defendant is liable to the plaintiff for rent, but must be settled at some other time and in some other way.

The rule making absolute the rule to show cause in the District Court, to the extent that it vacates the judgments, and opens the cases for a defense to be put in, is affirmed to the end that the claims of the plaintiff for unpaid rent be tried and determined on their merits in the several suits. But so far as it purports to set aside the service of process, it will be set aside.

No costs will be allowed to either party.