# Ex parte HOWARD WAGNER.

No. A-9016.   Oct. 30, 1935.
(50 Pac. [2d] 1135.)

162

164

Howard Wagner, in pro. per.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for respondent.

DOYLE, J. (after stating the case). In his petition for a writ of habeas corpus, Howard Wagner alleges that he is unlawfully imprisoned and detained in the state penitentiary, without authority of law, under a judgment of conviction entered in the district court of Osage county, for the offense of obtaining money by false pretenses, wherein he was sentenced to serve a term of three years

in the state penitentiary, and to pay a fine of $6,600, and costs in the sum of $94; that the penitentiary sentence imposed by said district court has been fully served, in that the only valid sentence imposed upon the petitioner by said district court was confinement in the penitentiary for the term of three years. It is agreed that the term of confinement for three years had fully expired on December 17, 1934, and that the respondent warden is holding the petitioner in custody on the theory that thereafter he was serving time one day for every dollar of the fine and costs, until the same shall be satisfied.

In the recent case of Ex parte Autry, 58 Okla. Cr. 88, 50 Pac. (2d) 239, 241, the question herein presented in a somewhat different form was considered by this court. The petitioner Autry, convicted of a felony, was sentenced to pay a fine of $1,500 and costs and ordered to be committed in the state penitentiary, "until said fine and costs are paid or time served for the same."

It was held that the Legislature has full authority to define crimes and to prescribe punishments, and to determine where prisoners may be sent; and that the courts have no discretion as to the place to which criminals may be sentenced except as the Legislature gives it. The sentence is always imposed and received under and interpreted by the law to which it is subject.

The pertinent part of the opinion in the Autry Case is as follows:

"The office of the write of habeas corpus is to afford the citizen a speedy and effective method of securing his release when illegally restrained of his liberty. Its scope, when directed to an inquiry into the cause of imprisonment in judicial proceedings, extends to questions affecting the jurisdiction of the court and the sufficiency in

point of law of the proceedings. Mere errors or irregularities in a judgment or proceeding of a court under and by virtue of which a person is imprisoned, which are not of such a character as to render the proceedings void, cannot be reviewed on an application for a writ of habeas corpus. Where a prisoner in custody under sentence of conviction seeks to be discharged on habeas corpus, the inquiry is limited to the questions whether the court in which the prisoner was convicted had jurisdiction of the person of the defendant and of the crime charged, and did the court have jurisdiction to render the particular judgment? Ex parte Grant, 32 Okla. Cr. 217, 240 Pac. 759; Ex parte Owens, 37 Okla. Cr. 118, 258 Pac. 758. * * *

"This leaves for our determination the question of the power and authority of the trial court to sentence a defendant convicted of a felony to imprisonment in the state penitentiary to enforce the payment of a fine and costs until the same shall be satisfied at the rate of $1 per day.

"The written law of this state makes no such specific provision. * * *

"Article 33, chapter 17, entitled 'Execution of Judgment,' provides:

"Section 3151. 'When the judgment is imprisonment in a county jail, or a fine, and that the defendant be imprisoned until it be paid, the judgment must be executed by the sheriff of the county or subdivision. In all other cases when the sentence is imprisonment, the sheriff of the county must deliver the defendant to the proper officer, in execution of the judgment.'

"Section 3164. 'When any poor convict shall have been confined in any prison for the space of six months, for non-payment of fine and costs only, or either of them, the sheriff of the county in which such person shall be imprisoned shall make a report thereof to any two justices of the peace for such county; if required by such justices, the said keeper shall bring such convict before them, either at the prison, or at such other convenient place thereto as they shall direct; the said justices shall pro-

ceed to inquire into the truth of said report, and if they shall be satisfied that the report is true, and the convict has not had since his conviction any estate, real or personal, with which he could have paid the sum for the nonpayment of which he was committed, they shall make a certificate thereof to the sheriff of the county, and direct him to discharge such convict from prison and the sheriff shall forthwith discharge him.'

"Section 3166. 'The fees herein provided * * * for the clerk of the district court, the clerk of the superior court, the clerk of the county court, the sheriff, the county attorney, the constable, and the justice of the peace, as provided in this act, and all costs in the prosecution of all criminal actions shall in case of conviction of the defendant be adjudged a part of the penalty of the offense of which the defendant may be convicted, whether the punishment for such offense be either imprisonment, or fine, or both, and fixed either by the verdict of the jury, or judgment of the court, trying the case, and the payment of such fees and costs in addition to the payment of the fine assessed, shall be enforced by imprisonment until the same shall be satisfied, at a rate of one dollar per day of such fees and costs, or fine, or both, whether the defendant shall perform labor on the public road or highway, or remain in prison.'

"Under the statute, when a judgment is payment of a fine and costs, the court has power and authority to enforce the payment of same by imprisonment of the defendant in the county jail, until the fine and costs are satisfied, and prescribing the rate per day for determining the period of imprisonment for the nonpayment of the same. The payment of the fine and costs is the punishment. The commitment until the fine and costs are paid or satisfied is no part of the punishment, it is the mode of executing the sentence; that is, of enforcing the payment of the fine and costs of prosecution. The power of the court to order a defendant adjudged to pay a fine and costs is not confined to cases where a fine only is imposed, but also extends to cases where both confinement and a fine are im-

posed as a punishment and includes the power to add to such fine the costs of prosecution.

"When the place of imprisonment is not specified in the law to be the state penitentiary, such imprisonment cannot be enforced in the penitentiary. To an imprisonment in the penitentiary infamy is attached.

"Our penal code provides:

" 'A sentence of imprisonment in the state prison for any term less than for life, suspends all the civil rights of the person so sentenced, and forfeits all public offices, and all private trusts, authority or power, during the term of such imprisonment.' Section 1813, St. 1931.

"The fundamental law of the United States and of the state of Oklahoma alike prohibit the taking of the citizen's life, liberty, or property, unless by the judgment of his peers, or the law of the land.

" 'Judgment of his peers,' is a term of expression borrowed from Magna Charta, and it means a trial by jury; the words 'or law of the land' have the same origin and are to the same effect as 'due process of law' in the Bill of Rights, Constitution, art. 2, § 7, declaring that:

" 'No person shall be deprived of life, liberty, or property, without due process of law.'

"It means judgment of the law in its regular course of administration through courts of justice.

"The terms 'law of the land' and 'due process of law' are synonymous, and mean that every citizen shall hold his life, liberty, and property under the protection of the general rules which govern society. Sutton v. State, 35 Okla. Cr. 263, 250 Pac. 930.

" 'Due process of law,' as used in the Bill of Rights, § 7, supra, is intended to protect the citizen against arbitrary action, and to secure to all persons equal and impartial justice.

"The Legislature has the power under the state Constitution to define crimes and prescribe punishments, and

to provide as the punishment for violations of the law defined as felonies the payment of fines and confinement in the penitentiary, and to provide for the enforcement of the payment of the same by further confinement after the imprisonment part of the sentence has been served.

"Punishment for crime is not restricted to the deprivation of life, liberty, or property by due process of law, but also embraces deprivation or suspension of political or civil rights. The enactment of section 1813 above quoted, was in the proper exercise of this power.

"No one would deny the proposition that a person cannot be taken to the state penitentiary, and detained there as a punishment without an accusation, trial by jury, conviction, and sentence in the due and orderly course of law. Nothing less than these forms would amount to due process of law, when an infamous punishment is to be imposed. No one would deny that such an act, done by the state, would be in direct defiance of the Constitution. When a defendant convicted in the due and orderly course of the law is adjudged to pay a fine and costs and the court in execution of the sentence orders the defendant 'to be taken to the state penitentiary at McAlester, Oklahoma, to be incarcerated in said penitentiary until the said fine and costs are paid or time served for the same,' such imprisonment would be another and separate punishment. The very statement of the proposition would seem to be its proof, and such imprisonment would not be due process of law. In such a case due process of law requires that a defendant shall not be subjected to a punishment infamous in character to enforce the payment of a fine and costs or until the same is satisfied. Upon the record before us it appears that petitioner had imposed upon him another and separate punishment of an infamous character, with the jury fixing only a fine.

"In the case of In re Bonner, 151 U. S. 242, 14 S. Ct. 323, 326, 38 L. Ed. 149, Mr. Justice Field, speaking for the court, said:

" 'When the jury have rendered their verdict, the court has to pronounce the proper judgment upon such verdict;

and the law, in prescribing the punishment, either as to the extent or the mode or the place of it, should be followed. If the court is authorized to impose imprisonment, and it exceeds the time prescribed by law, the judgment is void for the excess. If the law prescribes a place of imprisonment, the court cannot direct a different place not authorized. It cannot direct imprisonment in a penitentiary, when the law assigns that institution for imprisonment under judgments of a different character. * * *

" 'The prisoner is ordered to be confined in the penitentiary, where the law does not allow the court to send him for a single hour. To deny the writ of habeas corpus in such a case, is a virtual suspension of it; and it should be constantly borne in mind that the writ was intended as a protection of the citizen from encroachment upon his liberty from any source,—equally as well from the unauthorized acts of courts and judges as the unauthorized acts of individuals.

" 'The laws of our country take care, or should take care, that not the weight of a judge's finger shall fall upon any one, except as specifically authorized. A rigid adherence to this doctrine will give far greater security and safety to the citizen than permitting the exercise of an unlimited discretion on the part of the courts in the imposition of punishments, as to their extent, or as to the mode or place of their execution, leaving the injured party, in case of error, to the slow remedy of an appeal from the erroneous judgment or order, which, in most cases, would be unavailing to give relief.'

"This court is of the opinion that for the reasons stated the trial court had no power, authority, or jurisdicion under the law to sentence petitioner to confinement in the state penitentiary, in execution of the sentence of fine and costs to enforce the payment of the same."

In the case of Ex parte Wilson, 114 U. S. 417, 5 S. Ct. 935, 940, 29 L. Ed. 89, Mr. Justice Gray speaking for the court said:

"For more than a century, imprisonment at hard labor in the state prison or penitentiary or other similar institution has been considered an infamous punishment in England and America.

"Among the punishments 'that consist principally in their ignominy,' Sir William Blackstone classes 'hard labor, in the house of correction or otherwise,' as well as whipping, the pillory, or the stocks. 4 Bl. Comm. 377. And Mr. Dane, while treating it as doubtful whether confinement in the stocks or in the house of correction is infamous, says, 'Punishments, clearly infamous, are death, gallows, pillory, branding, whipping, confinement to hard labor, and cropping.' 2 Dane, Abr. 569, 570.

"The same view has been forcibly expressed by Chief Justice Shaw. Speaking of imprisonment in the state prison, which by the statutes of Massachusetts was required to be at hard labor, he said: 'Whether we consider the words "infamous punishment" in their popular meaning, or as they are understood by the Constitution and laws, a sentence to the state prison, for any term of time, must be considered as falling within them. The convict is placed in a public place of punishment, common to the whole state, subject to solitary imprisonment, to have his hair cropped, to be clothed in conspicuous prison dress, subjected to hard labor without pay, to hard fare, coarse and meager food, and to severe discipline. Some of these a convict in the house of correction is subject to; but the house of correction, under that and the various names of work-houses and bridewell, has not the same character of infamy attached to it. Besides, the state prison, for any term of time, is now by law substituted for all the ignominious punishments formerly in use; and, unless this is infamous, then there is now no infamous punishment other than capital.' Jones v. Robbins, 8 Gray [Mass.] 329, 349. In the same case, Mr. Justice Merrick, while dissenting from the rest of the court upon the question whether under the words 'the law of the land' in the Constitution of Massachusetts an indictment by a grand jury was essential to a prosecution for a crime punishable by imprisonment in

the state prison, and taking a position upon that question more accordant with the recent judgment of this court in Hurtado v. California, 110 U. S. 516, 4 S. Ct. 111 [28 L. Ed. 232], yet concurred with the other judges in holding that such imprisonment at hard labor was an infamous punishment. [Jones v. Robbins] 8 Gray [(Mass.) 329] 370-372.

"Imprisonment at hard labor, compulsory and unpaid, is, in the strongest sense of the words, 'involuntary servitude for crime,' spoken of in the provision of the ordinance of 1787, and of the thirteenth amendment of the Constitution, by which all other slavery was abolished."

The Constitution of our state designed as a bulwark against the power of oppression is broad enough to accomplish its purpose. The Bill of Rights forming a part of our fundamental law embraces a number of declarations of principles calculated to protect the people in the full enjoyment of civil liberty, as against the acts of the government, one of which is that excessive fines shall not be imposed, nor cruel or unusual punishments inflicted.

The highest function of this court is to pass upon constitutional questions involving the life and liberty of the citizen. The Legislature has full authority to provide prisons, and to determine where prisoners may be confined; and the courts have no discretion as to the place or prison to which criminals may be sentenced except as the Legislature gives it. In the exercise of this authority the Legislature has enacted article 33, chapter 17, of our Code of Criminal Procedure entitled, "Execution of Judgment," and have provided that the payment of fines and costs adjudged against a defendant shall be enforced by imprisonment in the county jail until the same shall be satisfied or the prisoner otherwise discharged as provided by law.

The judgment and sentence in this case is as follows:

"It is therefore, hereby considered, ordered, adjudged and decreed by the court that the said Howard Wagner be committed to and be imprisoned in the state penitentiary at McAlester, in the state of Oklahoma, and confined in said penitentiary for the term of three years for said offense of obtaining money under false pretenses and pay a fine of $6,600, said term of sentence to begin at and from date of delivery to warden, and that said defendant pay the cost of this prosecution taxed at $94 for which judgment is hereby rendered against the said defendant; and thereupon the defendant is by the court notified of his right of appeal."

It will be observed that the judgment and sentence is silent as to the enforcement of the payment of the fine and costs, and in that respect it is a correct and proper form of judgment, for the sentence is always imposed and received under and interpreted by the law to which it is subject. The court and the prisoner act with the knowledge of this fact, and must be presumed to understand that there is an existing law for the enforcement of payment of the fine imposed and the costs of the prosecution.

The questions presented in the case at bar have been determined and decided in the Autry Case holding that the imprisonment of a defendant by the warden of the state penitentiary to enforce the payment of the fine and costs is without authority of law.

It appearing from the admitted facts of the record that the sentence of confinement in the penitentiary for the term of three years has been fully served and expired on December 17, 1934, and that petitioner has been unlawfully imprisoned and detained without authority of law by respondent since such expiration and is entitled to be forthwith released and discharged from the imprisonment of which he complains, he is therefore by the judgment of this court discharged therefrom, and it is ordered

that respondent be, and he is hereby, directed to forthwith discharge and release said Howard Wagner.

Writ granted; petitioner discharged.

DAVENPORT, P. J., concurs. EDWARDS, J., not participating.