**Hubert Ray (Jiggs) WRIGHT, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16224.**

Court of Criminal Appeals of Oklahoma.

Aug. 2, 1972.

Rehearing Denied Aug. 21, 1972.

J. Rex Spurr, Shawnee, for appellant.

Larry Derryberry, Atty. Gen., Paul Ferguson, Asst. Atty. Gen., John L. Clifton, Dist. Atty., for appellee.

BRETT, Judge.

Appellant, Hubert Ray (Jiggs) Wright, in case number CRF 69-314, was tried and convicted by a jury in the District Court of Pottawatomie County, Oklahoma, for the crime of Murder. On June 10, 1969, the

jury returned a verdict finding defendant guilty of the charge and assessed his punishment at life imprisonment. Appellant will hereafter be referred to as defendant, as he appeared in the trial court. Defendant was found to be indigent and was represented throughout his trial by court appointed counsel, who perfected defendant's appeal to this Court. After reviewing the record and briefs submitted herein, the judgment and sentence is affirmed.

A summary of facts which led to this conviction is as follows: In the early morning of November 20, 1965, W. T. "Tobe" Switzer, was shot to death in his home by an unknown intruder. Two spent bullets were found at the scene, and a third one was removed from the deceased man's body. The three spent bullets were sent to the Oklahoma Bureau of Investigation for examination. The Bureau concluded that the spent bullets were fired from a weapon similar to an old model .38 caliber break-open type "Iver Johnson Owl Head" revolver. Their subsequent investigation revealed that Robert Paul Doyal had given such a weapon to the defendant early in November, 1965; and that Doyal had purchased the weapon from Willis Bates. Doyal identified two other persons who were with the defendant at the time he gave the gun to defendant. During the trial the state attempted to prove that a souvenir money clip was missing, in which the deceased man usually carried a thousand dollar bill. The record is not entirely clear whether or not the money clip was ever found, but Mrs. Switzer testified on cross-examination that the deceased's billfold containing $900.00 was later found in a drawer. One witness testified that he saw the defendant with a large number of bills hidden under the front seat cover of defendant's car; and other testimony attempted to show that defendant made an effort to cash a thousand dollar bill.

Subsequent to the Switzer murder, defendant was convicted in Texas for the crime of shooting with intent to kill; and during the investigation he was serving a ten-year sentence at the Coffield Unit of the Texas Department of Corrections.

When defendant was interviewed at the Texas Penal Institution, he admitted that Doyal gave him a gun, but he said that he had given it to Jerry Hathcock, who used it to shoot "Tobe" Switzer, after burglarizing the Switzer residence.[1] Defendant related to the investigators that he stayed outside and watched Hathcock enter the Switzer residence; that he heard shots and saw him leave the house by a window.

Defendant was first returned to Oklahoma on August 13, 1969, under the "Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceedings," 22 O.S.1961, § 721, et seq., to help locate the missing gun. At that time the murder information was styled, "State v. John Doe." The gun was not found and defendant was returned to the Texas Penal Institution. Later the information was amended charging Jerry Hathcock with the murder of Mr. Switzer.

On December 18, 1969, after defendant was afforded a proper hearing in Texas, with court appointed counsel, he was returned to Oklahoma a second time under the Uniform Witness Act, to appear as a material witness at the preliminary examination for Jerry Hathcock. Prior to the preliminary hearing the state offered to give defendant a lie-detector test, which he agreed to take. As the result of that test the district attorney advised defendant that he believed defendant was not telling the truth; and therefore he would not recommend to the court that defendant be granted immunity for his testimony. Consequently, when defendant was called to testify at the preliminary examination he refused to testify asserting his rights under the Fifth Amendment to the United States Constitution. At the conclusion of the hearing the information against Hathcock was dismissed for insufficiency of evi-

1. Defendant first identified the man to whom he gave the gun, as being Charles Yandell, but he later admitted that it was Jerry Hathcock.

dence, and on December 23, 1969, while defendant was still in Oklahoma under the Uniform Witness Act, a new information was filed charging the defendant with the murder of Mr. Switzer. An arrest warrant was issued, but it was returned "No Return." On December 30, 1969, while still in Oklahoma under the Uniform Witness Act, defendant was taken before the Honorable George Van Wagner, Special Judge of the District Court, for his initial appearance. The information was read; defendant's rights were explained to him; and his preliminary examination was set for February 3, 1970. The court appointed Mr. J. Rex Spurr to serve as defendant's attorney.[2]

On February 17, 1970, the court conducted a hearing on defendant's special motions: Motion to Dismiss, Demurrer, and Demand for Transcript of Proceedings. Both the motion and demurrer were denied, and the demand for transcript was denied because it demanded the record of the preliminary examination of Jerry Hathcock, at which defendant did not testify. At that hearing the Sheriff of Pottawatomie County testified that the reason he had not returned defendant to Texas was because the information had been filed against him, and those charges were still pending. It was defendant's contention that his rights were being violated because he was still in Oklahoma under the Uniform Witness Act; that the charges were illegal; and that he was not subject to arrest under the provisions of the Uniform Act. It should be noted, however, that defendant was in custody of the Pottawatomie County Sheriff under the provisions of the Uniform Act, whether he was arrested or not.

On March 4, 1970, defendant was returned to the Texas Penal Institution in compliance with the Uniform Witness Act. On the following March 30th, the district attorney filed an application for extradition proceedings to return defendant to Oklahoma for the purpose of standing trial on the murder charge. The Oklahoma Governor executed the extradition request on April 1st; on April 8, 1970, the Governor of Texas authorized defendant's return to Oklahoma; and on May 7th defendant was returned to Oklahoma.

On the following day, May 8th, defendant was again taken before Judge Van Wagner, sitting as a magistrate. The magistrate specifically stated that he was again treating the proceedings as defendant's "initial appearance" on the charges, advised defendant of his constitutional rights, and again appointed Mr. J. Rex Spurr to serve as defendant's attorney. Defendant's preliminary examination was had on May 19th and 20th, when he was ordered to stand trial.

Defendant's trial was held on June 8th, 9th, and 10th, 1970, at the conclusion of which the jury found defendant guilty and assessed his punishment at life imprisonment. The record of defendant's trial consists of three volumes, the first of which contains the proceedings on defendant's preliminary motions and his preliminary examination.

Defendant's brief argues five propositions of error, which are summarized as follows:

1. The information is invalid and void, and therefore the judgment and sentence is void because defendant was charged and arrested while in the State of Oklahoma under the Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceedings.

2. The trial court committed error in denying defendant's Motion for Change of Venue.

3. That the jury was improperly impaneled because it did not contain jurors of his peers, i. e., indigents, non-property owners and non-tax payers.

---

2. Defendant actually had three "initial appearances" before the district court. He was first taken before Judge Glenn Dale Carter, who denied defendant bail; on December 30, 1969, he made this initial appearance before Judge Van Wagner. Later he was given a third "initial appearance" before Judge Van Wagner.

4. That error was committed when during the voir dire of the jury certain panel members were excused because they objected to the death penalty in capital cases.

5. That defendant was convicted on insufficient circumstantial evidence.

## I.

Defendant's first proposition asserts that the information is invalid and void, and consequently the judgment and sentence is likewise void. This contention is predicated upon the provision of the Uniform Act found in 22 O.S.1961, § 724, as follows:

> "If a person comes into this state in obedience to a summons directing him to attend and testify in this state he shall not while in this state pursuant to such summons be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this state under the summons."

The phrase which gives rise to defendant's proposition in the instant case is: " . . . shall not while in this state pursuant to such summons be subject to arrest or the service of process, civil or criminal, in connection with the matters which arose before his entrance into this state under the summons." Process has been defined as follows:

> " 'Process' is a means whereby a court compels a compliance with its demands." Lobrovich v. Georgison, 144 Cal.App.2d 567, 301 P.2d 460, 464.

> "The word 'process' is a generic term and is defined as a means of compelling the defendant to appear in court." McArdle Real Estate Co. v. McGowan, 109 N.J.L. 595, 163 A. 24, 26.

It seems clear and therefore we hold, that the purpose for the uniform provision is to assure that an out-of-state witness, while in this state under protection of the Uniform Act, may not be arrested on an outstanding warrant pending in any criminal matter, nor be served with a civil summons in connection with any matter which arose prior to his return to Oklahoma under the Uniform Act.

However, we fail to find anything in the Uniform Act which precludes the filing of an information against a witness returned to Oklahoma so long as the witness' presence is sought in good faith, his testimony is material, and application of the Uniform Act has been made in good faith, and without prior knowledge that the witness might be subsequently charged with a crime. But the act is quite clear, and notwithstanding the absence of such proscription, even though the witness may be informed against, while in attendance in court under the Uniform Act, he may not be arrested on the warrant issued as the result of the information filed against him while in the State of Oklahoma under provisions of the Uniform Act. The witness must be returned to the asylum state and his return to the jurisdiction of the court must be accomplished through the extradition processes. Otherwise, the presumption arises that the prosecutor's application of the Uniform Act was not made in good faith.

However, in defendant's case, he was already in legal custody of the Pottawatomie County Sheriff, and was being held in the county jail under the authority of the Uniform Act. It is also important to note that defendant was returned to Texas under the provisions of the Uniform Act, even though belatedly. Also, after defendant's return to Texas he was subsequently returned to Oklahoma under proper extradition proceedings to stand trial. Notwithstanding the fact that defendant was taken before the Pottawatomie County magistrate on at least two occasions before being returned to Texas, those proceedings were null and void, which fact was recognized by Judge Van Wagner. And, had defendant been put to trial on the murder charges prior to being returned to Texas under the Uniform Act, his trial would have likewise been null and void for the reason the trial court would not

have had proper jurisdiction over his person. Such must be true if any significance is to be given the Uniform Act, notwithstanding the citations contained in the state's brief. The Attorney General cites Allen v. State, Okl.Cr., 400 P.2d 463, which provides: "Where an accused is physically before the court upon a criminal charge, either because he is held in custody after the arrest or because he has appeared in person after giving bail, the invalidity of the original arrest is immaterial as regards the jurisdiction of the court to proceed with the case." The Attorney General also cites Traxler v. State, 96 Okl.Cr. 231, 251 P.2d 815, and quotes: "Where a person accused of crime is held under valid process in proper form, such detention is not rendered invalid because of the illegality of the events which preceded it, or which made the detention physically possible." Under the facts of this case the process was not valid and in proper form until the defendant was extradited from Texas, because of the special provisions of the Uniform Act.

■ The significant aspect is that the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings does not provide for the delivery of a witness residing in another state as a matter of course. The Uniform Act was intended as a matter of comity between states to enable states to obtain material witnesses for criminal prosecutions, and not for the purpose of obtaining jurisdiction over their person. See: State v. Lesco, 194 Kan. 555, 400 P.2d 695, 699 (1965). The New York Court in the Matter of Mayers, 9 Misc.2d 212, 169 N.Y.S.2d 839, properly refused to order the attendance of a requested witness because the prosecutor testified that the prospective witness would become a defendant if the facts should warrant it.

■ The provisions of the Uniform Act are such that the witness can either be summoned or brought before a judge of the state in which he is located and possibly delivered across several state lines, which is not regarded as undue hardship. Also, the act applies only to proceedings involving crimes; and under the terms of the act the criminal proceedings must either be a trial or a grand jury investigation, or other criminal proceedings, which is pending or under way. The witness' testimony must be material, which fact must be established by the proper court of the demanding state. If the testimony is found not to be material, the state cannot demand rendition. The Uniform Act also requires an additional hearing before the court of the delivering state, at which the witness is extended further protection against summary delivery to the officials of another state; and the demanding state must establish that the testimony of the witness is material to pending criminal proceedings and that the trip will not cause undue hardship. As a condition of delivery the Uniform Act *demands a guarantee* against arrest or summons while the witness is going to, at, or coming from the demanding state.[3]

■ Consequently, the good faith of the demanding state is always at issue; and when the Uniform Act is used to obtain the presence of an alleged witness, but actually solely for the purpose of getting him within the state for prosecution, that jurisdiction must fail. However, in the instant case the record reflects that the district attorney did not reach the conclusion that defendant should be charged with the crime of murder until defendant was in the state to be a witness, took the lie-detector test and then refused to testify at the preliminary examination of Jerry Hathcock. Those actions, coupled with other information the district attorney had obtained, caused him to reconsider the defendant's plight; and consequently, the information was filed while defendant was still in Oklahoma.

Defendant's brief argues that defendant was never extradited, but the record reflects that he was taken back to the Texas

---

3. 13 Okl.Law Rev. 436, 438 (Nov.1960).

Penal Institution and later was returned to Oklahoma on proper extradition proceedings. Defendant was returned to Oklahoma on May 7th, and on May 8, 1970, he was again taken before Judge Van Wagner, who was sitting as a magistrate. The magistrate again announced that he was treating defendant's appearance as his "initial appearance"; he explained defendant's constitutional rights to him; and he again appointed Mr. J. Rex Spurr to serve as defendant's attorney. After defendant received a preliminary examination and was ordered to stand trial, he had a jury trial at which he was convicted.

Therefore, because any technical defect which might have appeared in defendant's earlier proceeding, was subsequently corrected; and because he was thereafter afforded his constitutional rights, we conclude that he was given a trial under a valid information and the judgment and sentence which resulted therefrom is not null and void.

## II.

 Defendant's second proposition is not supported by any authorities, and it is not subject to discussion as this Court stated in Sandefur v. State, 461 P.2d 954 (1969). However, suffice it to say, this Court held in Shapard v. State, Okl.Cr., 437 P.2d 565 (1967), that it is within the trial court's discretion whether or not a change of venue shall be granted. We have considered defendant's motion for change of venue, and the affidavits and reasons given for the trial judge's denial of the motion for change of venue, and find that the trial court did not abuse its discretion when the motion was denied. Defendant's second proposition is therefore denied.

## III.

 Defendant's third proposition asserting that the jury should have contained non-taxpayers, indigents, and non-property owners is without merit. It is

likewise not supported by any authorities, and is therefore denied. Defendant misinterprets the term "peers." This Court held in Ex Parte Wagner, 58 Okl.Cr. 161, 50 P.2d 1135 (1935):

"Judgment of his peers, is a term of expression borrowed for Magna Charta, and it means a trial by jury."

We also adopt the statement of the Oklahoma Supreme Court found in Agee v. Gant, Okl., 412 P.2d 155 (1966):

"All that parties may demand is a fair and impartial jury, composed of jurors possessing requisite statutory qualifications and selected and impaneled in mode prescribed by law, and without illegal discrimination of any character."

## IV.

 Defendant's fourth proposition asserts that the jury was impaneled in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), because certain members of the panel were excused for reasons that they objected to the imposition of the death penalty. This proposition is without merit. We have examined the voir dire and find that the voir dire was conducted in accordance with the provisions of 22 O.S.1961, § 660(8). This Court held in Koonce v. State, Okl.Cr., 456 P.2d 549 (1969):

"A prospective juror may be excused on a challenge for cause when he states that his reservations about capital punishment would prevent him from making an impartial decision as to the defendant's guilt and the punishment."

In that case this Court distinguished the Oklahoma Statute from the Illinois Statute found in *Witherspoon*, supra. Likewise, insofar as the death penalty was not imposed in this case, the question presented appears to be moot.

## V.

██ Defendant's last proposition asserts that he was convicted on circumstan-

tial evidence, which was insufficient to sustain the jury's verdict. "[C]ircumstantial evidence, coupled with the direct evidence offered [may be] sufficient basis on which the jury could reasonably conclude that the accused was guilty, as charged." Nichols v. State, Okl.Cr., 418 P.2d 77 (1966). "The credibility of the witnesses and the weight and value to be given their evidence is for the determination of the jury, and where the evidence and the reasonable and logical inferences and deductions to be drawn from it are sufficient to convince the jury beyond a reasonable doubt of the guilt of the defendant, the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence." Guthrey v. State, Okl.Cr., 374 P.2d 925 (1962). The only authority cited by defendant in support of this proposition is Riley v. State, 40 Okl.Cr. 135, 267 P. 494 (1928). In *Riley* the trial court failed to instruct the jury concerning the treatment of circumstantial evidence. However, in the instant case the trial court's instruction number nine properly instructed the jury on this question. We therefore deny defendant's fifth proposition.

We are therefore of the opinion, after considering the record and briefs submitted, that defendant's constitutional rights were not violated; that he received a fair trial according to due process of law; and the judgment and sentence in District Court of Pottawatomie County, case number CRF–69–314 should be, and the same is therefore, affirmed.

This trial and its preliminary aspects became considerably involved and confused in an area of the law in which few inroads have been made. Defense counsel was court appointed and no doubt received considerably less consideration than one would in other circumstances. Therefore, Mr. Spurr is to be commended for the manner in which he pursued defendant's matter throughout.

BUSSEY, P. J., concurs in result.

SIMMS, J., concurs.