THE STATE OF NEW YORK, Petitioner-Appellee, v. NATHAN WAGNER, Respondent-Appellant.

First District (2nd Division)   No. 79-988

Opinion filed December 11, 1979.

George B. Collins, of Collins & Amos, of Chicago, for appellant.

Charles J. Hynes, Deputy Attorney General, of New York, New York (Leslie Trager, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

A certificate issued by a justice of the New York Supreme Court pursuant to the Uniform Act to secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings (Ill. Rev. Stat. 1977, ch. 38, par. 156—1 *et seq.*) (hereinafter "Uniform Witness Act") requested the circuit court of Cook County to issue a summons directing respondent Nathan Wagner to appear before the Albany County Grand Jury which was investigating certain indictable offenses by persons associated with named business entities. Following a hearing before the circuit court of Cook County, Wagner was found to be a material and necessary witness to the Albany County grand jury proceedings and a summons was issued directing him to appear before the jury to testify, from which order respondent prosecutes this appeal.

Respondent presents as issues for review whether or not: (1) the facts set forth in the certificate demonstrate that respondent's testimony was

material and necessary to the subject matter of the inquiry; (2) respondent's right to due process of law was violated by the use of an *in camera* affidavit to establish materiality and necessity; (3) the requesting State is seeking the attendance of the witness to assist in the prosecution of the civil action involving the same issues as those presented in the certificate of the New York court; and (4) the laws of New York afford the witness the statutory protection afforded by the Illinois statute. We affirm the decision of the circuit court of Cook County for the reasons hereinafter set forth.

■■ Section 2 of the Uniform Witness Act details the requisite procedure for requiring a witness in this jurisdiction to testify in another State, in pertinent part as follows:

"If a judge of a court of record in any state which by its laws has made provision for commanding persons within that state to attend and testify in this state certifies under the seal of such court that * * * a grand jury investigation has commenced * * * that a person being within this state is a material witness in such * * * grand jury investigation, and his presence will be required for a specified number of days, upon presentation of such certificate to any judge of a court in the county in which such person is, such judge shall fix a time and place for a hearing, and shall make an order directing the witness to appear at a time and place certain for the hearing.

If at a hearing the judge determines that the witness is material and necessary, * * * he shall issue a summons, with a copy of the certificate attached, directing the witness to attend and testify in the court where the * * * grand jury investigation has commenced * * * at a time and place specified in the summons. In any such hearing the certificate shall be prima facie evidence of all the facts stated therein." (Ill. Rev. Stat. 1977, ch. 38, par. 156—2.)

In the present case, therefore, it is the circuit court of Cook County which must make the determination of whether the testimony of the witness being sought is material and necessary. The conclusion alone of a petitioning court that the witness sought is material and necessary is not entitled to *prima facie* evidentiary value. If the responding court deems the facts certified insufficient, then the determination must be supported by other facts in evidence. *In re Adams* (1976), 64 Ill. 2d 269, 273-74, 356 N.E.2d 55; *In re Grothe* (1965), 59 Ill. App. 2d 1, 8, 208 N.E.2d 581.

The certificate issued by the Supreme Court of New York contained, among others, the following statements:

"1. The Grand Jury of Albany County, State of New York has commenced an investigation into indictable offenses connected with the expenditure and receipt of monies by certain persons in

violation of the laws of this State by Di-Com Corporation and related persons and companies, including Di-Com Associates, Grace and Waring Ventures, Albert Schwartzberg, Jay Felner and Philip Schaffer.

2. Di-Com Corporation and its related companies and persons were involved in building many nursing homes and health related facilities in the State of New York. The cost of these homes has been passed on to the State of New York under the New York State reimbursement formula for construction costs for nursing homes and health related facilities. The Albany County Grand Jury is inquiring into various costs expended by Di-Com Corporation and its related companies to ascertain whether such costs were properly incurred and passed on to New York State by Di-Com Corporation and its related companies, whether such monies were expended for legal purposes and whether those receiving these monies paid the income taxes on such funds to the State of New York.

3. Albert Schwartzberg, Jay Felner and Nathan Wagner are all officers of Di-Com Corporation. They are also the controlling partners in Di-Com Associates and Grace and Waring Ventures.

  ❋ ❋ ❋

5. Nathan Wagner is a material witness to the Grand Jury's investigation because Nathan Wagner, as an officer of Di-Com Corporation (Secretary-Treasurer), and a partner in the related companies, signed many of the checks and authorized many of the payments being investigated by the Grand Jury. As such Nathan Wagner is likely to have knowledge as to the purpose and nature of these payments.

  ❋ ❋ ❋

7. The presence of Nathan Wagner before the Albany County Grand Jury panel is material, relevant and necessary for one day commencing June 20, 1979."

In addition to the certificate, an affidavit was sworn to and filed by the prosecutor which elaborated somewhat upon the foregoing facts and revealed additionally that the controlling partners of Di-Com's related companies, including respondent Wagner, also operated some of the facilities and have interests in them; that some of the costs involved in the construction of the nursing homes by Di-Com and its related companies were improperly incurred and included illegal payments; that the grand jury was also seeking to determine whether persons who received the illegal payments involved properly paid their income taxes; and that the laws of New York and Illinois, as well as the laws of the States through

which respondent must travel, protect respondent from arrest and service of civil and criminal process.

Another affidavit was prepared which, because the case involved grand jury proceedings, was presented *in camera* both to the New York Supreme Court and the circuit court of Cook County, which detailed the amount of payments involved; the persons to whom the payments allegedly were made; the fact that Wagner signed many of the checks involved in those payments and directed the making of the entries in the books with respect to them; and that there was evidence of certain payments having been made to public officials in the State of New York. Neither Wagner nor his counsel were permitted to examine the *in camera* affidavit; however, during the Cook County Circuit Court hearings, New York counsel informally disclosed to counsel for Wagner such materials contained within the *in camera* affidavit as he believed would not compromise the secrecy of the grand jury proceedings, including assertions that: the matter involved potential bribery charges against some public officials who acted in public capacities in matters related to nursing homes; the State of New York had both written and testimonial evidence that Wagner had some knowledge of the bribery, but no evidence that Wagner actually bribed anyone or handed money to anyone or any other act of that nature; one of Di-Com's partners, Schwartzberg, might be a New York resident; and that it was not known where the other partner lived. Counsel for New York offered to submit to the trial court the *in camera* affidavit, to which Wagner's counsel objected. The trial judge in overruling the objection stated:

"* * * I would consider the matters contained in the petition. I will also consider the *in camera* affidavit, if it be necessary.

I think that as I review matters contained in the relator's petition, that certainly there is sufficient allegation in the document which would indicate that certainly this witness would be material to the investigation. However, I mean to corroborate that, certainly the *in camera* affidavit would merely corroborate those matters."

Respondent's counsel thereafter sought and received five days within which to file appropriate pleadings, which were subsequently filed in the form of an answer setting forth essentially the same matters raised as issues presented for review in this appeal, and attached as an exhibit a copy of a civil complaint on file with the Supreme Court of New York, County of Westchester. Following the filing, a further hearing was held in the circuit court in which the answer was explicated by respondent's counsel and additional argument was presented. The trial court found from the certificate and affidavits that Wagner was in fact a material and necessary witness, signed a summons requiring Wagner to appear before

the New York grand jury and stayed enforcement thereof pending this appeal.

Respondent, on appeal, contends first that the certificate was insufficient to establish materiality upon which to require his attendance before the New York grand jury. The certificate sets forth the assertions that Wagner was secretary-treasurer of Di-Com Corporation, was a partner in related companies, signed many of the checks and authorized many of the payments being investigated by the grand jury, and would likely have knowledge as to the purpose and nature of the payments made.

Respondent maintains that the materiality of Wagner's information cannot be discerned from the certificate because, notwithstanding his having signed certain checks, neither the checks nor the persons to whom they were issued have been identified, and the materiality of Wagner's information is not obvious from these facts. We find this argument without merit. The certificate sets forth Wagner's involvement with Di-Com and its related companies as a partner and secretary-treasurer, who signed checks and authorized payments to be made to certain persons allegedly in violation of the laws of New York. Further, the certificate discloses that certain allegedly improper costs of the nursing homes built by Di-Com and its related companies were passed on to the State of New York under a reimbursement formula for construction costs with respect to nursing homes and health-related facilities. The materiality of respondent's testimony as one who authorized payments and signed the checks is patent.

■■ As previously noted, two affidavits were presented to the trial court, the contents of only the *in camera* affidavit having been denied to respondent's counsel. The first affidavit contains essentially the same factual information as the certificate, adding the facts that the controlling partners, including respondent, had operated certain nursing homes and had interests in others, which homes were built with improperly incurred costs for which the State of New York had reimbursed respondent and his associates. We have examined the *in camera* affidavit and find that a number of the statements therein contained have already been revealed in the certificate and first affidavit, as well as in the disclosure made informally to respondent's counsel by counsel for New York; other evidence therein contained does little more to support the claim of materiality. The trial court noted that it would look first to the certificate and then to the affidavits for corroboration. We are of the opinion that the information contained within the certificate itself was sufficient to support the court's conclusion that respondent's testimony was material to the grand jury inquiry.

■■ Respondent claims that the certificate and affidavit revealed to him

contain legal conclusions and are therefore insufficient to support the alleged materiality of testimony to be given by this witness. We need not require more specificity in the certificate than is required in pleadings however, and, in this instance, the opinion of the supreme court in *Van Dekerkhov v. City of Herrin* (1972), 51 Ill. 2d 374, 376, 282 N.E.2d 723, is of assistance, stating:

> "* * * The same allegation may in one context be deemed to be one of ultimate fact, while in another, '* * * where from a pragmatic viewpoint some of these words do not give sufficient information to an opponent of the character of evidence to be introduced or of the issues to be tried, they are held to be legal conclusions. What is law, what are facts, and what is evidence, for pleading purposes, can be determined only by a careful consideration of the practical task of administering a particular litigation.' "

In carefully considering the "practical task of administering * * * [this] particular litigation," we find the trial court properly concluded that the plain import of the allegations was clear enough to demonstrate sufficient materiality of Wagner's testimony so as to satisfy the requirements of section 2. Ill. Rev. Stat. 1977, ch. 38, par. 156—2.

Respondent's reliance upon *In re Adams* (1976), 64 Ill. 2d 269, 356 N.E.2d 55; *People v. McCartney* (1976), 38 N.Y.2d 618, 345 N.E.2d 326; and *In re Grothe* (1965), 59 Ill. App. 2d 1, 208 N.E.2d 581, is misplaced. In *Adams*, the certificate there involved stated that the witness sought in an inquiry into illegal expenditures was an employee who had knowledge that a certain named individual "owned" a nursing home, "looked around" the home when he was in Chicago, "consulted" with her on the facility's problems and "contemplated" "major expenses" of the home, which the supreme court found sufficiently informative and material to the questions of whether that individual spent his time in Chicago "supervising" the facility. In *McCartney*, the witness sought in a proceeding to suppress certain statements was a police officer who did not participate in questioning the declarant, was in and out of the room, did not observe a significant portion of the questioning and was therefore deemed not material to the inquiry. In *Grothe*, the witness sought was a mere bank custodian of stock transfer records who had no other relationship whatever thereto, who could not have advised the requesting State as to the purport or purpose of the questioned stock transfers.

■ Next argued by respondent is that his testimony has not been shown to be necessary to the grand jury inquiry because one of his partners was known to live in New York and another was not shown to be unavailable. The certificate reveals, however, that it was respondent who signed the checks and authorized the payments to be made which were among the

subjects being investigated by the grand jury. Respondent's positions as secretary-treasurer of Di-Com and as a partner in the related business entities are manifestly sufficient reasons for the grand jury to find his testimony necessary in its search for answers as to why he signed the checks and why he authorized certain payments to be made. The jury is not required to accept inferential or indirect evidence, if not hearsay, when the witness sought was directly involved in the questioned activities.

■■ The use of the *in camera* affidavit which the trial court received and read, respondent suggests, deprived him of his right of confrontation and due process of law. Consideration of such secret documents, he asserts, violated his sixth and fourteenth amendment rights because his counsel was not permitted to examine the evidence therein set forth which would have enabled him to properly analyze the contentions of his opponent and present his argument in opposition to the issuance of a summons. The State of New York argues that respondent was not entitled to have his attorney examine the secret document because respondent was simply a witness, was not under indictment or subject to criminal proceedings, and was not entitled to know evidentiary details which had been presented to the grand jury by other witnesses. We agree. Respondent's right to counsel in this instance is not questioned, and he may from time to time be permitted to consult with counsel concerning questions put to him. No authority is cited, however, which authorizes such a witness to demand the right to examine the testimony of other witnesses who may have gone before that body and given evidence. In relying upon *In re Grothe* (1965), 59 Ill. App. 2d 1, 208 N.E.2d 581 in this connection, respondent seeks to dissipate the interposition of grand jury secrecy by virtue of language in that opinion suggesting that the requesting State must forego either the advantage of secrecy or the advantage of having the witness, if the two conflict. As we have earlier noted, however, the certificate, entirely aside from the *in camera* affidavit, was sufficient upon which the trial court could have found the requisite materiality and necessity underlying the issuance of summons, unlike the certificate in *Grothe* which failed to set forth any explanation as to why the mere custodian of stock transfer records was a material or necessary witness to the Massachusetts inquiry there involved.

■■ Also raised as an issue for review is whether respondent's testimony is to be used in the grand jury inquiry or, rather, for the benefit of a related civil matter again involving alleged unauthorized nursing home expenditures. A copy of a civil complaint filed in the latter case was attached as an exhibit to respondent's answer and an examination of that complaint reveals that it was filed in Westchester County, New York, involving only a Westchester County nursing home, and does not relate itself to matters in Albany County. There is no factual foundation

supporting the conjecture that Wagner's testimony might also be used elsewhere. In any event, as long as the dominant purpose of seeking his testimony before the grand jury is related to a legitimate criminal investigation, the fact that it may also be subsequently used in other proceedings does not invalidate the request for his presence. See, *e.g.*, *United States v. Braasch* (7th Cir. 1974), 505 F.2d 139, 147, *cert. denied* (1975), 421 U.S. 910, 43 L. Ed. 2d 775, 95 S. Ct. 1561.

■■ As his last point, respondent maintains that the New York statute does not afford him full protection against arrest should he be required to go there, relying upon *Wright v. State* (Okla. Crim. App. 1972), 500 P.2d 582, which, he observes, permitted a defendant to be brought from Texas to Oklahoma as a witness under the Uniform Witness Act and resulted in his arrest there because evidence developed indicating that he himself had committed the crime. He argues that because there are claims that Wagner has knowledge of various activities that occurred at some prior time, nonetheless he could be charged after his arrival in New York and, if *Wright* is followed by the New York courts, he would lose the protection afforded him under constitutional provisions relating to extradition. A more careful reading of *Wright* reveals, however, that although Wright was improperly arrested in Oklahoma, he was subsequently returned to Texas and was tried in Oklahoma only following appropriate extradition proceedings. Therefore, even if the testimony sought here developed evidence inculpating respondent in a criminal act, he could not be arrested during the time which he spends in New York State for the purpose of testifying before the grand jury.

For the foregoing reasons, the order issuing the summons requiring the attendance of Nathan Wagner as a witness before the grand jury proceedings in New York must be affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.