## Richmond

JAMES A. DAVIS, TRADING AS DAVIS MOTOR COMPANY V. CLYDE E. HACKNEY.

January 17, 1955.

Record No. 4296.

Present, All the Justices.

The opinion states the case.

*Cutchins, Cutchins, Wallace & Kessler*, for the plaintiff in error.

*Jones & Jones,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

We granted James A. Davis, trading as Davis Motor Company, a writ of error to a final judgment quashing the service of process on Clyde E. Hackney and the service of an attachment on his automobile and dismissing Davis' suit against him, on the ground that Hackney, a non-resident of the State of Virginia, and his property, were immune from the service of process and attachment while he was appearing as a witness in a criminal trial in this State, pursuant to a subpoena upon which he had accepted service in Tennessee.

Counsel for both parties stipulated in the trial court as follows:

"On August 18, 1952, Clyde E. Hackney purchased from James A. Davis, trading as Davis Motor Company, a certain Pontiac Catalina automobile 1952 model for the sum of $3,095.00, and gave in part payment therefor his old car, a Pontiac Convertible sedan at an agreed valuation of $1,400. The balance of the purchase price was to be financed, but no part of it has been paid by Hackney.

"On the 18th day of October, 1952, a representative of the Division of Motor Vehicles had a summons issued against Davis to appear before the Civil (Trial) Justice of Chesterfield county, Virginia, on October 30, 1952, for 'failing to give invoice of sale and breakdown of finances and insurance in violation of Section 46-532 of the Motor Vehicle Code.'

"The case was heard before the Civil (Trial) Justice on that day and Davis was fined $50.00 and costs. The case was then appealed to the Circuit Court of Chesterfield county. At the calling of the criminal docket of the Circuit Court of Chesterfield county on the 9th day of February, 1953, the case was set for the 18th day of February, 1953.

"It was stipulated by both counsel in this cause that the Acting Commonwealth's Attorney of Chesterfield county mailed a summons to Hackney at his address in Tennessee

requesting his appearance on the 18th day of February, 1953, on the back of which Hackney endorsed his name below the words 'I accept service of the within summons' and mailed the said summons back to the Acting Commonwealth's Attorney of Chesterfield county.

"Hackney appeared in Virginia on the 18th day of February, 1953, and testified in the matter of *Commonwealth v. Davis.* A jury was waived in the cause, and the court affirmed the decision of the Civil (Trial) Justice and allowed traveling cost to Hackney in the amount of $40.00.

"Immediately after the hearing on the same day thereof Davis sued out an attachment against Hackney which was served upon him in Petersburg, Virginia, and upon the Pontiac Catalina car which had been left in Petersburg.

"The matter is now being heard on a special appearance of said Hackney, by counsel, who has moved the Judge of the said Circuit Court to quash and dismiss the said attachment on the ground that he is a non-resident of the State of Virginia and was a non-resident on the 18th day of February, 1953, and had returned to Virginia under a summons to testify in the case of *Commonwealth* v. *J. A. Davis* which was pending before the court; that the giving of said testimony was the sole purpose for which he returned to the State of Virginia, and that while within the State of Virginia he was privileged from the service of process, and that the 1952 Pontiac Catalina, which was necessary to his travel to Virginia, was likewise privileged from the service of process."

Two assignments of error are relied upon by Davis, the first being that "the court erred in holding that the acceptance of service by the defendant was the equivalent of proceeding under the statute to compel the attendance of the defendant as a witness and that he was immune from the service of civil process in this action." The statute referred to is section 19-242, *et seq.* of the Code, the Uniform Act relative to out-of-state witnesses. Davis' contention is that the passage of this act displaced the common law and that

only under the procedure outlined in it can a non-resident witness now secure immunity from process.

As to this assignment, it was stipulated that Hackney was a non-resident of the State of Virginia and at the time of the service of process was in the State solely for the purpose of testifying as a witness in the criminal case.

Since the decision in the case of *Commonwealth* v. *Ronald* (1786), 4 Call (8 Va.) 97, we have held that non-resident witnesses are immune from the service of process while attending court. Following this decision it was held in *Richards* v. *Goodson* (1823), 2 Va. Cases 381, that a party to a cause was privileged from arrest on a civil process while in attendance upon, going to and returning from court. In the later case of *Wheeler* v. *Flintoff* (1931), 156 Va. 923, 159 S. E. 112, Wheeler, a non-resident of the State of Virginia was the defendant in the case of *Commonwealth* v. *Wheeler*, then pending before the Trial Justice of Chesterfield county. While attending court in the criminal proceeding he was served with civil process in the case of *Flintoff* v. *Wheeler*. We there held that a non-resident party to a criminal prosecution was exempt from civil process while attending court.

After the decision in the *Wheeler* case, the General Assembly, in 1938, passed the Uniform Act referred to above granting immunity to non-resident witnesses. Prior to this enactment Virginia could not compel the attendance of non-resident witnesses to testify in the criminal courts of this Commonwealth.

Hackney contends that the passage of the Uniform Act was in aid of the common law as employed in the Virginia decisions above referred to. We agree with this contention. The act was passed in furtherance of the common law rule and did not supplant it. Its purpose was to compel the attendance of non-resident witnesses in criminal proceedings, granting them immunity from the service of process while in attendance upon the court. *Rhoads* v. *Dennis*, (Ohio App.) 115 N. E. (2d) 708.

In the instant case, under the Uniform Act, the Commonwealth's attorney had the privilege of requesting the Judge of the Circuit Court of Chesterfield county to issue a certificate under seal stating that Hackney was a material witness in the case of *Commonwealth* v. *Davis*. The certificate could have been sent to Tennessee to a court of record in the county in which Hackney then resided, and thereupon a summons would issue to Hackney directing him to appear before the Circuit Court of Chesterfield County. Such procedure would have been in accord with the act, and had it been followed the State of Virginia would have been required to tender Hackney ten cents per mile for travel to and from Tennessee and $5 per day while traveling and while in attendance upon the court. (Code, § 19-248)[1] This was the procedure available if necessary but it is both cumbersome and expensive. See Code, 1950, §§ 19-242 through 19-252, *supra*.

Instead of following the above procedure the Commonwealth's attorney sent a subpoena to Hackney in Tennessee, upon which Hackney endorsed acceptance of service and attended the court pursuant thereto. Thus the procedures provided for in the statute were dispensed with, the cost of travel reduced and the ends of justice accomplished. In this instance, the acceptance of service placed Hackney in the same position as if the process had been duly served upon him.

Hackney's evidence in the criminal case in which he had been summoned to testify as a witness was necessary in order to prove the Commonwealth's case, and the Commonwealth was therefore interested in having him appear. Under such circumstances he was entitled to immunity whether granted by statute or, as in this instance, by common law. To hold otherwise would lead to the conclusion (as contended for by Davis) that Code, §§ 19-242 through 19-252, *supra*, would have to be complied with in order for a non-

---

[1] Code, § 19-248 has been amended since the trial of this case by the Acts of 1954, ch. 639, p. 809.

resident witness to be granted immunity. The legislature intended no such result when it enacted the statute. Therefore, the trial court correctly held that Hackney was immune from civil process on this occasion.

The second assignment of error challenges the correctness of the court's order quashing the attachment against the automobile, it being the contention of Davis that even though the lower court was correct in holding that Hackney was personally immune from the service of process on this occasion the immunity did not and should not extend to the automobile which Hackney had purchased from Davis and had not paid for; that to hold otherwise would be a miscarriage of justice.

The common law rule granting immunity to a non-resident witness who comes into this State for the purpose of testifying in a criminal case is too important to yield to the personal advantage or disadvantage of individual suitors. We are not here concerned with the controversy between Davis and Hackney as to why Hackney has not paid for the automobile which he purchased from Davis. The courts of Tennessee remain open to Davis to litigate that question. Our interest is in the enforcement of a rule of law which is necessary to the orderly administration of justice. The reason behind the common law rule and the reason behind the Uniform Act is to secure the attendance of witnesses in courts to give testimony free from intimidation or embarrassment by being served with process in matters which arose before the witness entered the State. We said in *Wheeler v. Flintoff, supra*:

"The reason for the privilege is for the better protection of the courts in the administration of justice, and to prevent the intimidation of suitors, solicitors, and witnesses, and the disturbance of officers of the court in the performance of their duties. It is primarily for the protection of courts, the privilege to the individual is merely incidental." (156 Va., at p. 928)

The application of this privilege is not confined solely

to immunity to the person of the witness. It goes further and should be interpreted to extend to his property also. To grant immunity to the person of the witness and not to his property, the use of which was reasonably necessary to his attendance upon the court, would present a dangerous handicap to the free attendance of witnesses. The first paragraph of § 19-250, Code of Virginia, 1950, reads as follows:

"If a person comes into this State in obedience to a summons directing him to attend and testify in this State he shall not while in this State pursuant to such summons be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this State under the summons."

The above paragraph which, as aforesaid, is in furtherance of the common law rule, was ordained for the purpose of securing the attendance of witnesses. The basis of the doctrine is a sound public policy which leaves both suitors and witnesses free from fear or embarrassment. Burks Pleading and Practice, 4th Ed., Venue and Process, § 39, pp. 66, 67; *Hale* v. *Wharton*, 73 Fed. 739. See note, 25 L. R. A. 721. Logical reasoning requires that the rule apply to property reasonably necessary to the use of the witness while in attendance upon the court.

In this respect also the statute accords with the rule as established by the common law. In *Winder* v. *Penniman*, 181 N. C. 7, 105 S. E. 884, 13 A. L. R. 364, 367, it is said:

"If the defendant was exempt, as is unquestioned from the service of summons, then his books which were brought to be used in evidence in the case, and his necessary personal effects, such as clothing and the like, were exempt from attachment, because it was necessary for him to have them in attending the trial."

In the Annotation, 13 A. L. R., page 368, quoting from *Bridges* v. *Sheldon*, 7 Fed. 17, 43, it is said:

"The privilege to parties to judicial proceedings, as well as others required to attend upon them, of going to the place where they are held, and remaining so long as is necessary,

and returning wholly free from the restraint of process in other civil proceedings, has always been well settled and favorably enforced. It is mentioned in the Year Books (20 Hen. VI. 10), and enforced to protect not only the body of a suitor from arrest, but his horse and other things necessary for his journey, which would otherwise be attachable by the custom of London, from seizure for debt."

In the mechanical age in which we live the use of the automobile in traveling from Tennessee to Virginia was reasonably necessary. In fact, this was so stipulated by counsel. To hold otherwise would largely nullify the rule sought to be preserved.

In *Wheeler* v. *Flintoff, supra,* we quoted with approval from *Malloy* v. *Brewer,* 7 S. D. 587, 589, 64 N. W. 1120, 1122, 58 Am. St. Rep. 856:

"This immunity works no injustice to anyone, for unless the witness comes within the State, there would be no opportunity to serve process upon him. Therefore, the plaintiff who attempts to get service upon the witness while here as such, neither loses any rights, nor suffers any injury by reason of this rule. He is simply prevented from taking advantage of the necessary presence of the witness in furtherance of his own private purposes." (156 Va., at p. 928)

The reasoning employed in the above quotation should clearly extend to such property of the non-resident witness as is shown to be reasonably necessary to his use while in attendance.

For the reasons stated the order appealed from is

*Affirmed.*