STATE of South Dakota, Plaintiff
and Appellee,

v.

Theodore D. NEW, Defendant
and Appellant.

No. 18765.

Supreme Court of South Dakota.

Argued Feb. 14, 1995.

Decided Aug. 23, 1995.

Mark W. Barnett, Atty. Gen., Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Russell C. Molstad, Jr. of Morman, Smit, Hughes, Strain, Molstad and Haivala, Sturgis, for defendant and appellant.

AMUNDSON, Justice.

Defendant Theodore D. New (New) appeals his conviction for second-degree murder resulting from the death of John Mousseaux (Mousseaux). We affirm.

## FACTS

On April 7, 1993, Mousseaux was bludgeoned to death on a Meade County road north of Rapid City, South Dakota. Three men—Larry Black Bear (Black Bear), Augustine White Horse (White Horse), and New—were with Mousseaux at the time of his death. The trio fled the state after Black Bear and White Horse deposited the body. New parted company with the others in Denver, Colorado.

When White Horse and Black Bear returned to South Dakota, they were apprehended and charged with first-degree murder and kidnapping of Mousseaux. Black Bear pleaded guilty to first-degree manslaughter. White Horse was tried and acquitted of first-degree murder, but later pleaded guilty to accessory to first-degree manslaughter.

New was not initially charged with any crime arising out of the incident. Although he admitted being present, New denied personal involvement in Mousseaux's killing. In fact, New was a key source in the investigation of White Horse. Throughout the summer of 1993, New aided law enforcement in the investigation. New fully cooperated with authorities and was given food and lodging for his services.

In late summer, New moved to Minneapolis, Minnesota, to seek employment. Meade County Sheriff Jamie Davis (Davis) requested that New keep in touch so he could be subpoenaed to testify at the White Horse trial. New agreed and contacted Detective Robert Krebs (Krebs) of the Minneapolis Police Department upon arrival in the city. Pursuant to New's request, Krebs relayed New's whereabouts to Davis. When New spoke to Davis on the phone, he asked Davis to check on the possibility of two warrants against him in Pennington County for failure to pay a fine and comply with a DWI sentence. New indicated that if he returned to South Dakota to testify for the State, he did not want to be subject to arrest. Davis informed New that, based on his check of the records, there was no problem with the Pennington County warrants.

On September 21, 1993, Krebs delivered a subpoena to New which had been sent to him

by the Meade County State's Attorney. There was no hearing before a judge considering the materiality of New's testimony or potential hardship for him to return to South Dakota to testify. New returned to South Dakota, testified, and was paid mileage, food and a witness fee.

On October 4, 1993, the last day of the White Horse trial, Pennington County officers arrested New on two outstanding warrants. Meade County authorities filed a complaint against New for Mousseaux's murder on the same day, which was served on him while he was incarcerated for these Pennington County warrants.

On October 21, 1993, while being held in jail, New allegedly made incriminating statements about the murder to another inmate, Rodney Young (Young). Young testified that New admitted to striking Mousseaux with a ball peen hammer.

New filed a pretrial motion for psychological evaluation to determine his mental competency to stand trial. Dr. Frank Buzzetta (Buzzetta), a psychologist, examined New and filed findings with the court. Buzzetta suggested New undergo further psychological testing. After considering the issue on February 15, 1994, the trial court denied this request.

A jury convicted New of second-degree murder on May 2, 1994. He was acquitted of all remaining charges. New appeals his conviction.

### ISSUES

I. DID THE TRIAL COURT ERR IN DENYING NEW'S MOTION TO DISMISS BASED ON PROCEDURAL DEFICIENCY?

1. The trial court stated in its conclusions of law:
   I. That [New] was entitled to the same immunity from arrest as he would have received if the State had complied with the provisions of SDCL 23A–14[, and]
   II. That, although New was improperly arrested while testifying under immunity at the Augustine White Horse trial, dismissal of the charges against the Defendant is not a proper remedy.
   The court's findings of fact, however, are void of any rationale stating the reasons why immunity

II. DID THE TRIAL COURT ERR IN ALLOWING EVIDENCE OF WHITE HORSE'S ACQUITTAL TO BE HEARD BY THE JURY?

III. DID THE TRIAL COURT ERR IN DENYING NEW'S REQUEST FOR ADDITIONAL PSYCHOLOGICAL TESTING AND A COMPETENCY HEARING PURSUANT TO SDCL 23A–10A–3?

IV. IS THERE SUFFICIENT EVIDENCE TO SUPPORT NEW'S CONVICTION?

### DECISION

*I. Denial of Motion to Dismiss—*

New filed a motion to dismiss, arguing that he testified at the White Horse trial under immunity from prosecution pursuant to SDCL 23A–14–22 and, therefore, was not subject to arrest. The trial court held that, even though New's arrest was improper due to a procedural deficiency in failing to follow the Uniform Act To Secure The Attendance Of Witnesses From Without A State In Criminal Proceedings (Uniform Act), SDCL 23A–14–19, dismissal of the charge was not warranted.[1] State argues the trial court clearly erred in setting forth inconsistent conclusions of law. We agree with State and recognize the inconsistency. "In reviewing the trial court's denial of a motion to dismiss, our inquiry is whether the circuit court abused its discretion." *Opp v. Nieuwsma,* 458 N.W.2d 352, 356 (S.D.1990); *see also State v. Winckler,* 260 N.W.2d 356 (S.D.1977).

New alleges he entered the state with immunity under SDCL 23A–14–22, prohibiting the issuance of any warrant or service of process against him while testifying as the State's witness.[2] We agree with New

applied, or in that event, why dismissal was improper. We have stated that conclusions of law must be supported by findings of fact. *State v. Goodroad,* 521 N.W.2d 433, 434 (S.D.1994). Such support is absent from this record.

2. The language of SDCL 23A–14–22 provides:
   If a witness comes into this state in obedience to a summons directing him to attend and testify in this state he shall not while in this state pursuant to such summons be subject to arrest or the service of civil or criminal process in connec-

that this section grants immunity for witnesses testifying under the Uniform Act. However, it is clear this statute must be construed "in pari materia" with the rest of SDCL ch. 23A–14. *Sander v. Geib, Elston, Frost Prof. Ass'n.*, 506 N.W.2d 107, 122 (S.D. 1993). In this case, State did not implement the Uniform Act under SDCL 23A–14–19, since there was no certificate sent to a Minnesota judge stating that New's testimony was material and necessary for a fair adjudication of the trial, and therefore, he should be compelled to return to South Dakota to testify.[3] Faced with a similar procedural deficiency, the court in *In re Schuler*, 120 N.J.Super. 79, 293 A.2d 404 (1972), held that immunity from process is not available to a witness when the statutory requisites of the Uniform Act are not met. "In the absence of compliance with the procedure prescribed by [the Uniform Act] the exception from arrest and service of process … does not exist." *Id.* 293 A.2d at 407.

■ As in *Schuler*, New relies on a "subpoena" which "amounted to no more than a letter or written request from someone in the prosecutor's office" that he return to South Dakota to testify against White Horse. The last sentence of SDCL 23A–14–19 provides that a certificate stating New was a material witness "shall be presented to a judge of a court of record in the jurisdiction in which the witness is found." New has presented no evidence that a judge signed or acknowledged the subpoena requesting his assistance. The subpoena presented to New was void of any force and effect to compel him to return to South Dakota to testify.

New also cites *Wright v. State*, 500 P.2d 582 (Okl.1972), in claiming he was granted immunity under SDCL 23A–14–22. In *Wright*, however, the provisions of the Uniform Act were followed, whereas, in New's situation, the trial court found they were not. *Id.* at 585. In order to interpret this chapter "in pari materia," a necessary condition for SDCL 23A–14–22 immunity to attach is that the witness be compelled to testify. State did not proceed under the Uniform Act. The trial court's conclusion that the statute was applicable was in error and immunity did not apply in this case.

New voluntarily entered South Dakota to cooperate in State's prosecution of White Horse. *See Schuler*, 293 A.2d at 404. He had adequate knowledge of criminal procedures. The fact that he knew and was clearly concerned with the consequences of returning to South Dakota amid outstanding warrants shows sufficient knowledge of the consequences in returning to the state. Furthermore, at no time did the police or prosecutors give New assurances that he would not be arrested if he testified against White Horse. New's motion to dismiss was properly denied.

tion with matters which arose before his entrance into this state under the summons.

3. Minnesota's adoption of the Uniform Act is set forth in Mn.Stat.Ann. § 634.06 (West 1985), and provides:

(a) Upon presentation of a certificate from a judge of a court of record in any state that may require persons within that state to attend and testify in criminal actions or grand jury investigations in this state stating that (1) there is a criminal action pending in the court or a grand jury investigation has commenced or is about to be commenced; (2) a person within this state is a material witness in the action or grand jury investigation; and (3) the person's presence will be required for a specified number of days at the trial or grand jury investigation; a judge of the district court of the county where the person resides, or where the person is found if not a resident of this state, shall set a time and place for a hearing and notify the person of the time and place.

(b) If at the hearing the judge determines that (1) the person is a material and necessary witness; (2) it will not cause undue hardship to the person to be compelled to attend and testify in the other state; and (3) the laws of the state where the person will testify and of any other state that the person may be required to pass through by ordinary course of travel will provide protection from arrest and the service of civil and criminal process; the judge shall make an order, with a copy of the certificate attached, directing the person to attend and testify at the time and place specified in the certificate.

(c) If the person, after being paid by an authorized person reasonable travel and lodging expenses and $25 for each day the person is required to travel and attend as a witness, fails without good cause to attend and testify as directed by the order, the person is guilty of constructive contempt of court.

## II. Admission of Witness' Acquittal—

New argues the court erred in allowing White Horse to testify that he had been acquitted of Mousseaux's murder and kidnapping. New claims this evidence was unduly prejudicial, and implicated him as Mousseaux's killer. We review a trial court's evidentiary rulings on an abuse of discretion standard. In *State v. Moriarty*, 501 N.W.2d 352 (S.D.1993), this court stated:

'For us to disturb the evidentiary rulings of the circuit court, we must determine that an abuse of discretion has occurred. Once again, an abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.'

*Id.* at 355 (quoting *State v. Devall*, 489 N.W.2d 371, 374 (S.D.1992)).

New filed a motion in limine to prohibit State from presenting testimony of White Horse's acquittal before the jury. The trial court initially granted the motion. However, the trial court later changed its ruling based on references made by New's attorney in opening statement that White Horse was involved in Mousseaux's death. The court said that excluding evidence of White Horse's acquittal "suggests to the jury that Mr. White Horse has a lot more at stake in the outcome of this trial then he, in fact, does."

The court stated that denying the jury this evidence would mislead them into believing that White Horse's testimony against New was based upon a plea arrangement. "I can see where the jury might draw the conclusion that Mr. White Horse avoided a murder prosecution by [ ] agreeing to testify and taking the guilty plea on the accessory charge." On redirect examination, White Horse testified that he had been acquitted of the first-degree murder and kidnapping of Mousseaux.

New alleges error because he claims the prejudicial effect of this evidence substantially outweighs its probative value. *State v. Chief Eagle*, 377 N.W.2d 141, 143 (S.D.1985). Despite this contention, New sufficiently placed this witness' credibility into question through cross-examination which presented inconsistencies in White Horse's testimony. The cross-examination also uncovered White Horse's plea agreement, conditional upon testifying against New. This strategy of the defendant "opened the door" for the introduction of the testimony of White Horse regarding his acquittal for the murder. *State v. Burtzlaff*, 493 N.W.2d 1, 6 (S.D. 1992). Furthermore, New has failed to carry the burden of showing any actual prejudice resulting from the admission of this evidence. *State v. Stetter*, 513 N.W.2d 87, 90 (S.D.1994) (citations omitted). We do not find the trial court abused its discretion.

## III. Additional Psychological Testing—

The law is clearly established that a person may not be "tried, sentenced, or punished for any public offense while he is mentally incompetent to proceed." SDCL 23A–10A–2; *State v. Jones*, 406 N.W.2d 366, 368 (S.D.1987). On January 21, 1994, the trial court granted New's motion to submit to psychological testing. Dr. Buzzetta conducted an evaluation and filed a report with the court indicating that it was unlikely New had the mental capacity to contribute to his own defense. Buzzetta recommended New undergo more comprehensive testing by a neuropsychologist to confirm his analysis. Based on this recommendation, New requested additional psychological testing and a competency hearing. The court denied New's request, which he cites as error.

New argues that he was entitled to additional testing and a mental competency hearing as provided in SDCL 23A–10A–3,[4] even

4. SDCL 23A–10A–3 provides:

At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the prosecuting attorney may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is *reasonable cause* to believe that the defendant may presently be suffering from a mental disease or developmental disability, or other conditions set forth in § 23A–10A–1, rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceeding against him or to assist properly in his defense. Prior to the date of hearing, the court may order that a psychiatric or psycho-

though he underwent an initial evaluation by Buzzetta. However, the trial court has the discretion to grant or deny a hearing based on whether "reasonable cause" exists where a defendant's mental condition precludes him from understanding the proceedings against him, or from assisting in his own defense. SDCL 23A–10A–3; *Gross v. Solem,* 446 N.W.2d 49, 52 (S.D.1987). *See also State v. Whitney,* 486 N.W.2d 269 (S.D.1992).

SDCL 23A–10A–1 provides:

The term, 'mentally incompetent to proceed,' as used in this chapter, means the condition of a person who is suffering from a mental disease, developmental disability, as defined in § 27B–1–3, or psychological, physiological or etiological condition rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

In considering whether New was mentally competent to stand trial, the trial court reviewed Buzzetta's evaluation and heard his testimony in a February 7, 1994 motions hearing. The court also observed New's conduct at his arraignment, as well as read transcripts of his testimony at the White Horse murder trial. Based on these observations and New's knowledge of the criminal justice system, along with his demeanor at all court appearances, the court denied New's motion for further psychological testing and a competency hearing. The record is void of any evidence of how New was unable to assist in defending the case. The trial court did not abuse its discretion in finding no reasonable cause existed for further mental examination.

*IV. Sufficiency of the Evidence—*

▮▮▮▮ The standard of review for determining sufficiency of the evidence in a criminal case is well settled. "The question is whether there is evidence in the record, which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *State v. Sprik,* 520 N.W.2d 595, 601

(S.D.1994) (citing *State v. Davi,* 504 N.W.2d 844, 856 (S.D.1993); *State v. Brings Plenty,* 490 N.W.2d 261, 266 (S.D.1992); *State v. Ashley,* 459 N.W.2d 828, 831 (S.D.1990); *State v. Davis,* 401 N.W.2d 721, 722 (S.D. 1987)). " 'In making our determination, this Court will accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict.' " *Sprik,* 520 N.W.2d at 601 (quoting *Davi,* 504 N.W.2d at 856). According to New, there is no credible evidence to support his conviction of second-degree murder. He cites the contradictory testimony of Black Bear and White Horse. He additionally notes the lack of physical evidence linking him to the crime. Despite these allegations, it is the jury's function to determine credibility of the witnesses, resolve conflicts and weigh the evidence. *Jenner v. Leapley,* 521 N.W.2d 422, 432 (S.D. 1994). Upon review of the record, we find sufficient evidence to affirm the jury's verdict.

Based on our above holding, we find it unnecessary to address New's motion to suppress his incriminating statement, as it is without merit.

We affirm.

MILLER, C.J., and KONENKAMP, J., concur.

SABERS, J., dissents.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.

SABERS, Justice (dissenting).

New was illegally arrested and detained and any statements he made while under his illegal incarceration should be excluded as "fruits of the poisonous tree." *Wong Sun v. U.S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

New cooperated with law enforcement. He was subpoenaed to testify at the White Horse trial. Before leaving his home state of Minnesota, New asked South Dakota law en-

---

logical examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the

provisions of §§ 23A–46–1 and 23A–46–2. The hearing shall be conducted pursuant to the provisions of § 23A–46–3. (Emphasis added.)

forcement if there were any outstanding warrants against him in South Dakota. He was told, "No." New came to South Dakota to testify only because of this assurance. Before he could return home to Minnesota, he was served with two warrants from Pennington County and taken into custody. While in custody, he gave incriminating statements to another prison inmate.

SDCL 23A–14–22 provides:

If a witness comes into this state in obedience to a summons directing him to attend and testify in this state he shall not while in this state pursuant to such summons be subject to arrest or *the service of civil or criminal process* in connection with matters which arose before his entrance into this state under the summons.

(Emphasis added). SDCL 23A–14–14 defines the terms used in SDCL 23A–14–22. "Summons" is a "summons, *subpoena,* order or other notice requiring the appearance of a witness." SDCL 23A–14–14 (emphasis added). New was immune from the service of criminal process because he was in South Dakota in obedience to a subpoena directing him to appear and testify in the White Horse trial. SDCL 23A–14–22.

The majority states that since the Uniform Attendance of Out–of–State Witnesses Act (SDCL 23A–14–14 through SDCL 23A–14–24, inclusive) was not complied with, the charges against New should not be dismissed because the Act does not apply. However, South Dakota law grants to witnesses who appear voluntarily the same immunity from process as is granted under SDCL 23A–14–22. *Citizens Bank of Parker v. Williams,* 50 S.D. 137, 208 N.W. 829, 830 (1926). At common law, a witness who entered the state voluntarily for the purpose of testifying was given the same immunity from process as a defendant. The purpose of the Act is to procure the presence of *involuntary* out-of-state witnesses. *Id.* "Certainly a witness who refuses to come into the state until he is forced to come should not be granted greater privileges or immunities than one who comes voluntarily." *Id.* Other courts have also

held witnesses who voluntarily enter the state are immune from process while in the state for the purpose of testifying. *State v. Taran,* 253 Minn. 158, 91 N.W.2d 444 (1958); *Davis v. Hackney,* 196 Va. 651, 85 S.E.2d 245 (1955). As noted by the court in *Davis:*

The [law] was in furtherance of the common law rule and did not supplant it. Its purpose was to compel the attendance of nonresident witnesses in criminal proceedings, granting them immunity from the service of process while in attendance upon the court.... The reason behind the common law and the reason behind the Uniform Act is to secure the attendance of witnesses in courts to give testimony free from intimidation or embarrassment by being served with process in matters which arose before the witness entered the state.

85 S.E.2d at 247–48. To illegally serve New and incarcerate him is contrary to the intent and purpose of the immunity from process statutes. SDCL 23A–14–22; *Citizens Bank,* 208 N.W. at 830.

It has not been shown that the Act abrogated common law immunity.* *See Davis,* 85 S.E.2d at 248. Therefore, New was illegally served and incarcerated.

New sought to suppress his statements made to a fellow prisoner during his illegal incarceration. We have formulated the question in *Wong Sun* as follows:

Thus the question becomes whether or not, granting the establishment of a primary illegality, the evidence to which objection has been made was obtained by exploitation of that illegality or by means sufficiently distinguishable to be purged of the primary taint.

*State v. Pierson,* 248 N.W.2d 48, 52 (S.D. 1977). Statements obtained pursuant to an invalid arrest are "fruits of the poisonous tree" and should not be allowed as evidence against the defendant. *See Id.; Wong Sun,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Here, South Dakota law enforcement told New that no warrants were currently out-

---

* If the legislature *intended* to abrogate the common law immunity, it could have addressed the relevant statutes as it did in 23A–14–18 when discussing punishment for failure to appear, "A witness, who has been summoned pursuant to §§ 23A–14–15 to 23A–14–17, inclusive ..."

standing. He was subpoenaed to testify while law enforcement prepared his arrest warrant to be used upon his arrival in the state. This resulted in New's incarceration where he made incriminating statements to a fellow prisoner. New's statements were "obtained by exploitation of that illegality" which makes them inadmissible. *Pierson*, 248 N.W.2d at 52. Therefore, it was error to deny New's motion to suppress.