COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Alston and O'Brien
Argued at Alexandria, Virginia


TOBIAS OGBANNA REED

                                                       MEMORANDUM OPINION* BY
v.        Record No. 1305-15-4              JUDGE ROSSIE D. ALSTON, JR.
                                                            AUGUST 30, 2016

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Marvin D. Miller (Bret D. Lee; Law Offices of Marvin D. Miller,
on briefs), for appellant.

Susan Baumgartner, Assistant Attorney General (Mark R. Herring,
Attorney General; Victoria Johnson, Assistant Attorney General,
on brief), for appellee.


Tobias Ogbanna Reed (appellant) appeals his conviction for distribution of cocaine after

having previously been convicted of two or more felony offenses under Code § 18.2-248(C).

Stated succinctly, appellant argues in his nine assignments of error that the trial court erred in

denying his motion to suppress and motion to quash cell phone evidence obtained through an *ex

parte* order and a subpoena *duces tecum*.  We affirm the decision of the trial court.

I.  Background

In the summer of 2011, appellant, who was facing federal charges at the time, received

permission to work as a confidential informant with Detective Benjamin George of the

Alexandria Police Department's Vice/Narcotics Unit.  On July 18, 2012, around 7:15 p.m.,

Fernando Payne purchased cocaine from appellant on behalf of undercover Detective John East

_____

*Pursuant to Code § 17.1-413, this opinion is not designated for publication.

of the same Vice/Narcotics Unit (Payne did not know that Detective East was a law enforcement officer at the time of the purchase). Detective George was assisting in the drug buy organized by Detective East through Payne, and during the drug buy, he identified appellant as the only person in a vehicle Payne entered and then quickly exited before returning to Detective East with the cocaine. Appellant was not authorized to be involved in any drug buys outside of those organized by Detective George.

On August 3, 2012, Detective East applied for an *ex parte* court order pursuant to Code §§ 19.2-61 and 19.2-70.3[1] and 18 U.S.C. § 2703,[2] stating that electronic communication records

---

[1] Code § 19.2-70.3 is Virginia's companion statute to 18 U.S.C. § 2703 and provides in relevant part:

> A. A provider of electronic communication service or remote computing service, which, for purposes of subdivisions 2, 3, and 4, includes a foreign corporation that provides such services, shall disclose a record or other information pertaining to a subscriber to or customer of such service, excluding the contents of electronic communications and real-time location data, to an investigative or law-enforcement officer only pursuant to:
>
> . . . .
>
> 3. A court order issued by a circuit court for such disclosure issued as provided in subsection B;
>
> . . . .
>
> B. A court shall issue an order for disclosure under this section only if the investigative or law-enforcement officer shows that there is reason to believe the records or other information sought are relevant and material to an ongoing criminal investigation.

[2] 18 U.S.C. § 2703, required disclosure of customer communications or records, provides the same standard for obtaining records concerning electronic communication service (with different requirements to obtain the contents of those communications) as Code § 19.2-70.3. (A court order "shall issue only if the governmental entity offers specific and articulable facts

related to a cell phone number known to be associated with appellant were "relevant and material to this ongoing criminal investigation." Detective East's statement in support of the application further provided that he developed probable cause to believe that the phone number associated with appellant "is associated with the suspect or other person who can aid the investigation." In the application, Detective East cited the following facts establishing probable cause: His experience conducting drug buys from Payne; that on July 18, 2012, Detective East provided Payne with recorded money to make a purchase and that Payne left his cell phone with Detective East when he went to purchase the drugs and told Detective East that if his phone rang and "it says 'Tobias' that's my man. Pick up and tell him I'm coming." The application also included the fact that Detective George recognized appellant in the car Payne approached from his previous experience working with him as a confidential informant. The *ex parte* order was granted and served by fax to Verizon at its offices in New Jersey directing Verizon to provide appellant's cell phone records for the period from May 1, 2012 through October 3, 2012. Verizon produced the requested records to the Commonwealth, including real-time GPS location data for the phone during the requested time period.

On August 16, 2012, a state arrest warrant was issued for appellant, charging him with one count of distribution of cocaine arising from his involvement in Payne's drug buy on July 18, 2012. On August 17, 2012, appellant was sentenced by a federal court to 24 months' incarceration for violating his supervised release because of a conviction in Fairfax County, and appellant was immediately taken into federal custody. Though Alexandria law enforcement apparently knew that appellant was being held in the local jail at that time, it did not serve him

---

showing that there are reasonable grounds to believe . . . the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).)

with the arrest warrant, and in September 2012, appellant was transferred to the Federal

Correctional Institution in Butner, North Carolina (FCI Butner).

On June 5, 2014, appellant was released from FCI Butner and immediately served with

the state arrest warrant by Alexandria police as he walked out of the federal prison facility.

Appellant was taken into state custody and transported back to Virginia, and on July 14, 2014, he

was indicted on the charge he now appeals; one count of distribution of cocaine after having

previously been convicted of two or more felony offenses under Code § 18.2-248(C).

The Commonwealth filed a request for issuance of a subpoena *duces tecum* on January 7,

2015 for all detail records pertaining to two cell phone numbers, one of which was a number

known to be used by appellant.  The request for the subpoena *duces tecum* sought records from

Verizon "pertaining to electronic communication and files" for July through August 2012, to

include cell site data, text message data (but not the contents of the messages), and incoming and

outgoing detail records.[3]  The subpoena *duces tecum* was issued to Verizon at Cellco Partnership

in Bedminster, New Jersey, apparently at the request of Verizon, rather than issued to the

Verizon offices in Virginia.

Appellant moved to quash the subpoena *deuces tecum* on January 13, 2015, arguing that

the request was overly broad in requesting all call records for July and August, including cell site

records and text message details (but not the content of the texts).  Appellant further argued that

---

[3] The call records requested in the application for the subpoena *duces tecum* were the same call records already obtained by the Commonwealth from Verizon in response to the 2011 *ex parte* order.  According to the Commonwealth, Verizon requested a subpoena in 2015 for internal purposes to authorize it to have a local records custodian pull the records and attend appellant's trial to authenticate the records.

the subpoena *duces tecum* did not comply with Rule 3A:12[4] or Code § 19.2-277,[5] and violated

the Electronic Communications Privacy Act (also known as the Stored Communications Act

(SCA)), 18 U.S.C. § 2701 *et seq.*  The Commonwealth filed an opposition memo to appellant's

motion to quash the subpoena *duces tecum*, arguing that the request complied with all relevant

rules and statutes.  The Commonwealth also stated that it needed the records to rebut appellant's

expected alibi defense, to show that calls between appellant and Detective George, and appellant

and Payne, occurred and were relevant and material to prove the drug transaction between

appellant and Payne.

---

[4] Rule 3A:12.  Subpoena, provides in relevant part:

> (b) *For Production of Documentary Evidence and of Objects Before a Circuit Court*.  - Upon notice to the adverse party and on affidavit by the party applying for the subpoena that the requested writings or objects are material to the proceedings and are in the possession of a person not a party to the action, the judge or the clerk may issue a subpoena duces tecum for the production of writings or objects described in the subpoena. . . .

> . . . .

> (c) *Service and Return*.  A subpoena may be executed anywhere in the State by an officer authorized by law to execute the subpoena in the place where it is executed.  The officer executing a subpoena shall make return thereof to the court named in the subpoena.

[5] Code § 19.2-277 "Summoning witnesses in another state to testify in this Commonwealth" provides:

> If a person in any state which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions . . . commenced . . . in this Commonwealth is a material witness in a prosecution pending in a court of record in this Commonwealth, . . . a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. . . .  This certificate shall be presented to a judge of a court of record in the county in which the witness is found.

On February 2, 2015, appellant next filed a combined motion to suppress and supplement to motion to quash, arguing that the evidence obtained as a result of the *ex parte* order should be suppressed because it was wrongfully obtained in violation of appellant's constitutional and statutory rights because it was overly broad, issued without the required factual showings, and illegally served outside of the Commonwealth. The Commonwealth's response on February 4, 2015, provided further factual basis for the subpoena *duces tecum* and argued that Verizon requested the subpoena to ensure that the individual sent to testify at the appellant's trial as records' custodian could state that he personally accessed the records and that they were true reproductions. The Commonwealth further argued that Verizon requested the subpoena *duces tecum* be delivered at its central address in New Jersey. At the hearing on February 12, 2015, regarding pre-trial motions to suppress records received in response to the *ex parte* order and subpoena *duces tecum*, the Commonwealth stated that it only intended to introduce at trial the historical records of calls made by appellant, not any real-time location/"pinging" data.[6] The trial court determined that the subpoena *duces tecum* should be narrowed to two days before and after July 18, 2012, when the events at issue occurred. The trial court denied appellant's constitutionally-based motions to suppress the records obtained in response to the *ex parte* order

_____

[6] Cell phones, even when simply in the "on-mode" and not being used to make or receive phone calls or text messages, are constantly sending out signals or "pings" that are picked up by nearby cell towers. Rescue and law enforcement authorities can determine the pinged cell phone user's actual physical location when they cross-compare the phone ping's distance from a number of different transmission towers. The most common method for determining a cell phone's location to a "fair degree of precision" is triangulation. Alexandra Wells, *Ping! The Admissibility of Cellular Records to Track Criminal Defendants*, St. Louis U. Pub. L. Rev. 487, 492 (2014). This technique is especially valuable when attempting to retrace the previous whereabouts of a prime criminal suspect. Law enforcement can, as it did in this case, use historical cell phone records reflecting cell towers the suspect's cell phone pinged at the relevant time and maps of the service provider's cell towers in the relevant area to place a suspect in a particular geographical area at a particular time. However, the weight and accuracy of these archived records are questionable since cell signals go to the tower with the strongest signal, not necessarily the cell tower geographically closest to the cell phone. Id. at 492-93.

and refused to quash the subpoena *duces tecum*. Specifically, the trial court found no constitutional issue with respect to service of the subpoena *duces tecum* on Verizon's office in New Jersey and noted that Verizon asked for subpoenas to be served by fax at that location. The trial court also found that appellant did not have standing "with respect to the subpoena *duces tecum*."

At appellant's bench trial on March 2, 2015, Detective East and Detective George both testified as to their histories with Payne and appellant, respectively, as well as their observations of Payne and appellant's actions on July 18, 2012. Next, Avram Polinski, custodian of records for Verizon Wireless, testified regarding the records provided in response to the subpoena *duces tecum*. Mr. Polinski testified as to the records for two phone numbers: 571-329-7478 and 703-XXX-XXXX. Mr. Polinski testified that the subscriber listed for the 571 number was Taadow Turner.

Counsel for appellant objected to the relevance of the records for the 571 number because the phone belonged to a third party and no evidence was offered as to why the records were relevant. However, Detective George previously testified that the 571 number in question was known to him as appellant's phone number. Appellant's counsel argued that the remaining information was irrelevant because the Commonwealth could not show that the records were all related to appellant. The Commonwealth stated that it only intended to introduce information from July 18, 2012, the date that appellant was known to be using the phone. After considering the arguments of counsel, the trial court overruled appellant's objection.

Mr. Polinski then authenticated the Verizon records, which were admitted into evidence. The historical records introduced by the Commonwealth displayed incoming and outgoing call information for each of the two phone numbers, the duration of the calls, the towers through which calls were routed, and the "face" of the tower through which the call was routed, which

- 7 -

Mr. Polinski explained reflected approximately from which direction of the tower the signal pinged. There was no evidence presented regarding the substance of the calls. In addition to the records specific to the phone number associated with appellant, Verizon produced a map of the cell towers in the relevant area of Alexandria on July 18, 2012. According to the testimony presented, by using the cell tower identification information in the phone records and the map of towers, law enforcement was able to approximately place whoever had the phone in the general area of where the drug buy took place between Payne and appellant. The records did not, however, identify who possessed the phone at the time of the calls, nor did they provide a specific location for where appellant or Payne was located.

At the conclusion of the bench trial, the court found appellant guilty of distribution of a controlled substance, third or subsequent offense. In its factual findings, the trial court stated that it found persuasive Detective George's identification of appellant as the person in the car in which Payne apparently obtained the cocaine, along with the cell phone records corroborating the phone numbers used by appellant and Payne and calls between them. The trial court also found letters written by appellant while incarcerated indicative of his guilt. On June 2, 2015, the trial court sentenced appellant to eleven years' incarceration with one year suspended. This appeal followed.

## II. Analysis

Appellant asserts nine assignments of error, which combined present four core issues related to both the *ex parte* order and the subpoena *duces tecum*. First, appellant contends that the trial court erred in serving the *ex parte* order and the subpoena *duces tecum* on Verizon by fax to its New Jersey office because the trial court had no jurisdiction to do so and that doing so violated the Stored Wire and Electronic Communication's Act, 18 U.S.C. § 2701 *et seq.*, Virginia's companion statute, Code § 19.2-70.3, and Rule 3A:12. Second, appellant asserts that

the trial court erred in issuing the *ex parte* order and the subpoena *duces tecum*, because they were based on the same insufficient factual predicate and included an overly broad timeframe, involving months of records irrelevant to the day of the drug buy in question. Third, appellant also argues that the trial court violated his Fourth Amendment rights by ordering a foreign corporation to produce cell phone records, including real-time GPS location data, without requiring a warrant. Finally, appellant argues that the trial court erred by holding that he did not have standing to object to the issuance of the subpoena *duces tecum*. Because we find the standing issue dispositive of several assignments of error, we will begin our analysis there.

A. Appellant lacks standing to move to quash the subpoena *duces tecum*.

Though presented as combined motions to suppress the cell phone records acquired through the *ex parte* order and to quash the subpoena *duces tecum*, the same records were produced in response to both the order and the subpoena. The records admitted at trial were the records the Verizon records custodian retrieved and testified to in response to the subpoena *duces tecum*, not the *ex parte* order. Therefore, because we agree with the trial court that appellant had no standing to move to quash the subpoena *duces tecum* on the particular grounds that he did, we need not separately address appellant's objections to the *ex parte* order.

The trial court had the authority to issue the subpoena *duces tecum* pursuant to Rule 3A:12, which provides that circuit courts "[u]pon notice to the adverse party and on affidavit by the party applying for the subpoena that the requested writings are material to the proceedings . . . may issue a subpoena duces tecum for the production of writings." Subsection c provides that a "subpoena may be executed anywhere in the State by an officer authorized by law to execute the subpoena in the place where it is executed." In compliance with subsection b, the affidavit filed with the request for the subpoena *duces tecum* stated that the assistant

Commonwealth's Attorney believed the records related to the two phone numbers were "material to the proceeding and . . . in possession of the Records Custodian for Verizon Wireless."

Appellant first asserts that the trial court improperly and ineffectively served the subpoena *duces tecum* on Verizon by facsimile to Verizon's New Jersey offices. In this regard, appellant essentially puts the cart before the horse. To reach this issue, appellant must first have standing to contest the propriety and effectiveness of the service of the subpoena *duces tecum*. To this end, appellant falls short. In the context of this case, appellant does not have standing to raise an objection to the method and place of service on Verizon. Standing to do so rests solely with Verizon. See Code § 8.01-277 ("A person, *upon whom process to answer any action has been served*, may take advantage of any defect in the issuance, service or return thereof by a motion to quash filed prior to or simultaneously with the filing of any pleading to the merits." (emphasis added)). Verizon never objected to the method of service of the subpoena *duces tecum* and in fact requested service by facsimile at its New Jersey offices.

Moreover, by accepting service of the subpoena *duces tecum*, willingly producing the requested records, and sending a custodian of records to testify at appellant's trial, Verizon waived any objection to the method of service of the subpoena *duces tecum* that it may have had. See Lyren v. Ohr, 271 Va. 155, 159, 623 S.E.2d 883, 885 (2006) ("A general appearance 'is a waiver of process, equivalent to personal service of process, and confers jurisdiction of the person on the court.'" (quoting Gilpin v. Joyce, 257 Va. 579, 581, 515 S.E.2d 124, 125 (1999))). Appellant argues that the Commonwealth must have issued and served the subpoena *duces tecum* pursuant to the Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings, Code §§ 19.2-272 through 19.2-282. However, Verizon's voluntary acceptance of and compliance with the subpoena *duces tecum* negated the need for the Commonwealth to compel Verizon's compliance through the Uniform Act. See Davis v.

- 10 -

Hackney, 196 Va. 651, 655, 85 S.E.2d 245, 247 (1955) (out-of-state witness in a criminal trial who accepted service of a subpoena and appeared in Virginia to testify willingly "dispensed with" the procedures provided in the Uniform Act and "placed [the witness] in the same position as if the process had been duly served upon him").

Thus, the subpoena *duces tecum* was issued in accordance with all applicable laws and appellant has no standing to move to quash the subpoena based on the method and location of service.[7]

B.  The records admitted at trial were material and relevant.

Appellant also challenges the materiality of the subpoena *duces tecum* by arguing that the factual basis for the subpoena, along with the timeframe and scope of the historical and real-time location data requested was insufficient and the records were immaterial.  While again there is some question as to the facility from a standing perspective for appellant to challenge the material released by Verizon, to the extent that there may have been any error in the scope of the records subpoenaed, or some constitutional basis for appellant to challenge the materials released, we find that any such error was corrected by the trial court.

---

[7] Appellant cited Yelp, Inc. v. Hadeed Carpet Cleaning, Inc., 289 Va. 426, 770 S.E.2d 440 (2015), numerous times in support of his argument that the trial court lacked jurisdiction to serve a subpoena *duces tecum* or *ex parte* court order pursuant to the Stored Communications Act against a non-party by facsimile out-of-state.  Yelp, however, is inapposite to this case.  In Yelp, the issue before the Supreme Court was a trial court's authority to *enforce compliance with* a subpoena *duces tecum* against an out-of-state non-party for out-of-state records simply because it was registered to do business in Virginia.  First, Yelp challenged the circuit court's authority and method of service whereas in the present case, Verizon willingly complied with the subpoena *duces tecum* and *ex parte* order, and even requested the method and location of service.  Second, though the Supreme Court held in Yelp that the circuit court did not have such enforcement authority, it did not hold that the circuit court did not have the authority to issue the subpoena *duces tecum*.  In fact, it declined to quash the subpoena *duces tecum* at issue, noting that there were other statutory mechanisms through which the records Hadeed sought could be lawfully subpoenaed.  Id. at 439 n.19, 770 S.E.2d at 446 n.19.  For these reasons, Yelp is inapplicable to the issues presented in this case.

First, the factual basis for the records requested was sufficient and the standard for materiality required by Rule 3A:12 was met. In compliance with subsection b, the affidavit filed with the request for the subpoena *duces tecum* stated that the assistant Commonwealth's Attorney believed the records related to the two phone numbers were "material to the proceeding and . . . in possession of the Records Custodian for Verizon Wireless." Additionally, the historical call records for a phone number known by Detective George to be associated with appellant for a four-hour window of time during which appellant was allegedly involved in a drug buy with a known drug dealer and during which time appellant was alleged to have called Payne, were clearly relevant to the Commonwealth's case against appellant. The records corroborated Detective George's identification of appellant by placing him in the general area of the drug buy, and connected him to Payne through phone calls between the two phone numbers at the time relevant to the drug buy. Therefore, the records – at least for July 18, 2012 - were relevant and material to the case against appellant.

### C. Any error regarding the timeframe and scope of the records subpoenaed was corrected by limitation of the evidence admitted at trial.

Appellant raises numerous arguments regarding the scope of the records requested by the Commonwealth and produced by Verizon; however, appellant fails to consider that the only records introduced at trial were historical call records for the 571 number and a 703 number known to be used by Payne, from approximately 4:00 p.m. to 8:00 p.m. on July 18, 2012. At the beginning of the hearing on the motion to suppress, the Commonwealth stated that it only intended to use historical records of calls made by appellant at trial, and not any real-time location or "pinging" data. At the conclusion of the hearing on the motion to suppress, the parties and trial court agreed to narrow the timeframe for relevant call records to two days before and after July 18, 2012. At trial, the Commonwealth presented an even further narrowed subset

- 12 -

of call records specific to the time of the drug buy and the surrounding few hours. Thus, though location data was obtained along with the historical call record data for a much greater span of time, the evidence actually admitted against appellant was ultimately narrowed in time and substance. For this reason, we will not assess whether or not the trial court erred by ordering Verizon to provide several months' worth of historical cell phone records and real-time GPS surveillance of appellant without requiring a warrant, because any remedy appellant may have had as a result of any such error was corrected by the fact that only historical cell phone records from the relevant time and date of the drug buy were admitted at trial.

For the foregoing reasons, we find no error in the trial court's issuance of the subpoena *duces tecum* or its denial of appellant's motion to suppress and motion to quash.

Affirmed.